Mary Lou CLAPS

v.

MOLITERNO STONE SALES, INC., Kenneth Castellucci, Joseph DeGirolamo, George Craemer, Local 6, International Union of Bricklayers and Allied Craftsmen, and James Nolan.

Case No. N–90–CV–519 (JAC).

United States District Court,
D. Connecticut.

March 29, 1993.

142

Karen Lee Torre, Law Offices of Karen Lee Torre, New Haven, CT, for plaintiff.

Paul V. Curcio, Adler, Pollock & Sheehan, Providence, RI, Margaret P. Mason, Tyler, Cooper & Alcorn, New Haven, CT, for defendants.*

---

* Attorneys Paul V. Curcio and Margaret P. Mason represented defendants Moliterno Stone Sales, Inc. ("Moliterno Stone"), Kenneth Castellucci, Joseph DeGirolamo, and George Craemer when the two summary judgment motions were filed. After Moliterno Stone was placed in temporary receivership in state court, Attorneys Curcio and Mason obtained the court's permission to withdraw their appearances for all defendants except Castellucci. Attorney Pamela J. Norley subsequently entered an appearance as court-appointed counsel for defendant Craemer, and Ms. Norley authorized Attorney Curcio to argue the summary judgment motions on her behalf. No appearances have been filed for defendants DeGirolamo and Moliterno Stone, and no attorneys represented these defendants at the summary judgment hearing.

## RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, Chief Judge:

This is an action for damages and injunctive relief under Title VII of the Civil Rights Act of 1964 and under Connecticut state law. The plaintiff is a stonemason who was employed by defendant Moliterno Stone Sales, Inc. ("Moliterno Stone"), during the construction of the Connecticut Financial Center in New Haven, Connecticut. She alleges that the defendants discriminated against her on the basis of her gender by creating a hostile work environment.

Pending before the court are two motions for summary judgment filed by defendants Moliterno Stone, Kenneth Castellucci, Joseph DeGirolamo, and George Craemer. The first is the defendants' Motion for Partial Summary Judgment (filed June 12, 1992), which seeks summary judgment on all of the plaintiff's state law claims and on the plaintiff's federal claims to the extent they seek compensatory and punitive damages and damages for pain and suffering. The second is the defendants' Supplemental Motion for Summary Judgment (filed September 8, 1992), which seeks summary judgment on the remaining portions of the plaintiff's federal claims. The plaintiff filed a response to both motions on February 16, 1993, and the court held a hearing in this matter on March 15, 1993.

### FACTS

The plaintiff in this action, Mary Lou Claps, was employed as a stonemason by the defendant Moliterno Stone from November 21, 1988 to June 12, 1989 during the construction of the Connecticut Financial Center in New Haven, Connecticut. While employed by Moliterno Stone, Claps was a member of the defendant Local 6, International Union of Bricklayers and Allied Craftsmen ("the Bricklayers Union") and was therefore covered by a collective-bargaining agreement between the Bricklayers Union and Moliterno Stone. Defendant George Craemer was an employee of Moliterno Stone and served as the immediate supervisor of Claps; defendant Joseph DeGi-

rolamo was also an employee of Moliterno Stone and served as the superintendent for Moliterno Stone at the job site; defendant Kenneth Castellucci was the chief executive officer of Moliterno Stone; and defendant James Nolan was a steward for the Bricklayers Union and was employed on the job site during the construction of the Connecticut Financial Center.

The plaintiff has alleged that the defendants discriminated against her on the basis of her gender by causing or permitting acts of verbal and physical harassment that created a hostile work environment. She has alleged that defendant Craemer sought to demean and humiliate her by his words and actions; that defendant DeGirolamo knew of defendant Craemer's actions but did nothing to prevent them and, in addition, publicly used terms derogatory to women to describe the plaintiff; that defendant Castellucci received a letter from the plaintiff dated May 18, 1989, in which the plaintiff described the alleged harassment and that defendant Castellucci took no action in response to the letter; that no official of Moliterno Stone took any action to prevent the recurrence of the alleged harassment despite the fact that the plaintiff brought the problem to the attention of defendants Craemer, DeGirolamo, and Castellucci; and that the Bricklayers Union and defendant Nolan failed to intervene on her behalf to end the discrimination and harassment. Finally, the plaintiff has alleged that, after receiving no response from the officers of Moliterno Stone, she felt compelled to leave the employment of that firm and did so on June 12, 1989. After leaving Moliterno Stone, the plaintiff filed an administrative complaint with the Connecticut Commission on Human Rights and Opportunities (CCHRO) and the federal Equal Employment Opportunity Commission (EEOC).

The plaintiff commenced this action on September 24, 1990 and filed an amended complaint ("Amended Complaint") on July 31, 1992. The Amended Complaint is not divided into separate counts, but it asserts three types of claims against the four defendants who have filed the pending summary judgment motions. First, the plaintiff alleges that the four moving defendants violated

Title VII of the Civil Rights Act of 1964 by discriminating against the plaintiff on the basis of gender and by retaliating against the plaintiff for seeking relief from the alleged discrimination. Second, the plaintiff alleges the following state law claims: (1) wrongful discharge by all four defendants; (2) retaliatory discharge in violation of Conn.Gen.Stat. § 31–51q by all four defendants; (3) breach of employment contract by defendants Moliterno Stone and DeGirolamo; (4) breach of promise to provide safe working environment by all four defendants; (5) intentional infliction of emotional distress by DeGirolamo and Craemer; (6) assault and battery by defendants DeGirolamo and Craemer; (7) liability of defendants Moliterno Stone and Castellucci for intentional torts committed by DeGirolamo and Craemer; (8) negligence by defendants Moliterno Stone and Castellucci in hiring and employing defendants DeGirolamo and Craemer; (8) negligent misrepresentation by all four defendants; and (9) abuse of process by defendants Moliterno Stone and Castellucci for bringing a counterclaim against the plaintiff. Finally, the plaintiff alleges that the four moving defendants conspired with the two non-moving defendants to deprive the plaintiff of her civil rights in violation of 42 U.S.C. § 1985.

## DISCUSSION

The defendants are entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original). While the court must view

the inferences to be drawn from the facts in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986) (Feinberg, C.J.), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The non-moving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Finally, " 'mere conclusory allegations or denials' " in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978)).

## I

The defendants seek summary judgment on the plaintiff's Title VII claims in their entirety based on the plaintiff's failure to exhaust grievance procedures available under a collective-bargaining agreement. In the alternative, the defendants seek summary judgment on the Title VII claims to the extent that the plaintiff demands compensatory or punitive damages or damages for pain and suffering.

### A. *Title VII Claims: Exhaustion of Grievance Procedures.*

The Amended Complaint alleges that the four moving defendants discriminated against the plaintiff on the basis of her gender[1] and that the defendants retaliated against the plaintiff in response to her efforts

---

1. *See* Amended Complaint at ¶ 20. This claim is based on 42 U.S.C. § 2000e–2(a), which provides in pertinent part that

  [i]t shall be an unlawful employment practice for an employer ... to discharge any individu-

al, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

to obtain relief from the alleged harassment.[2] The defendants argue that these claims ("the Title VII claims") should be barred because the plaintiff failed to exhaust grievance procedures available under a collective-bargaining agreement.[3] In response, the plaintiff contends that the collective-bargaining agreement only required employees to arbitrate contractual disputes, not statutory claims.[4] The court now concludes that the plaintiff is not barred from bringing her Title VII claims because the collective-bargaining agreement does not require employees to submit individual statutory claims to arbitration.

The defendants' challenge to the plaintiff's Title VII claims rests on the holding of the Supreme Court in *Gilmer v. Interstate/Johnson Lane Corp.,* —— U.S. ——, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). The plaintiff in that case had agreed, in his application to register as a securities representative, "to arbitrate any dispute, claim, or controversy" arising between him and his employer. *Id.* at ——, 111 S.Ct. at 1650. After he was dismissed, the plaintiff brought a claim against his employer in federal court under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.,* arguing that the arbitration agreement which he had signed required the arbitration only of contractual disputes. The Supreme Court concluded that the agreement also required the arbitration of statutory claims and therefore held that the agreement barred the plaintiff's ADEA action. The Court explained that " '[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.' " *Id.* at ——, 111 S.Ct. at 1652 (quoting *Mitsubishi Motors Corp. v.*

*Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985)). Applying the principle articulated in *Mitsubishi* and *Gilmer,* courts have held that individual employees who agree to arbitrate disputes with their employers must arbitrate Title VII claims. *See Bender v. A.G. Edwards & Sons, Inc.,* 971 F.2d 698, 700 (11th Cir.1992); *Mago v. Shearson Lehman Hutton, Inc.,* 956 F.2d 932, 935 (9th Cir.1992); *Willis v. Dean Witter Reynolds, Inc.,* 948 F.2d 305, 312 (6th Cir.1991). In light of these holdings, the defendants in this case now argue that the plaintiff should be required to arbitrate her Title VII claims because she agreed—by virtue of the collective-bargaining agreement under which she was employed—to submit such claims to grievance procedures.

The plaintiff relies on a different line of authority to support her contention that the collective-bargaining agreement does not require the arbitration of her Title VII claims. This line of authority begins with the decision in *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), where the Court permitted an employee who had exhausted grievance procedures available under a collective-bargaining agreement to bring a Title VII claim in federal court. In that case, the Court held that collective-bargaining agreements do not require employees to submit statutory claims to grievance procedures. The purpose of the grievance procedures, the Court found, was simply to resolve disputes arising out of the collective-bargaining agreement itself. The Court stated that

> [i]n submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit

---

2. *See* Amended Complaint at ¶ 23. This claim is based on 42 U.S.C. § 2000e–3, which provides in pertinent part that

> [i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

3. *See* Defendants' Supplemental Motion for Summary Judgment (filed September 8, 1992) ("Defendants' September 8 Memorandum") at 2–3.

4. *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Partial Summary Judgment and Supplemental Motion for Summary Judgment ("Plaintiff's Memorandum") (filed February 16, 1993) at 20–34.

under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence.

*Gardner–Denver,* 415 U.S. at 49–50, 94 S.Ct. at 1020. The Court reached the same holding in subsequent cases involving different statutes, each time emphasizing that grievance procedures under collective-bargaining agreements protect only contractual rights. *See Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 737, 101 S.Ct. 1437, 1443, 67 L.Ed.2d 641 (1981) (claim under Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*); *McDonald v. West Branch,* 466 U.S. 284, 292, 104 S.Ct. 1799, 1804, 80 L.Ed.2d 302 (1984) (claim under 42 U.S.C. § 1983). The plaintiff now argues that these holdings clearly set collective-bargaining agreements apart from other employment contracts: that is, while individual employment contracts may require employees to arbitrate both contractual and statutory claims, collective-bargaining agreements simply require employees to arbitrate contractual claims.

The defendants' challenge to the plaintiff's Title VII claims would, in effect, require the court to hold that collective-bargaining agreements may require employees to arbitrate *both* contractual and statutory claims. Neither *Gardner–Denver* nor *Gilmer* supports this conclusion. First, the holding in *Gardner–Denver* was based on the assumption that the collective-bargaining process could, in some circumstances, pose a threat to the protection of individual statutory rights. The Court noted that collective bargaining is a "majoritarian process" that may subordinate the interests of individual employees to the good of union members as a group. This tension between individual and group interests, the Court concluded, should

not be permitted to compromise statutory rights that Congress had conferred on individual employees under Title VII. *See Gardner–Denver,* 415 U.S. at 51, 94 S.Ct. at 1021; *see also Barrentine,* 450 U.S. at 742, 101 S.Ct. at 1445 (balancing of individual and collective interests might lead union to sacrifice statutorily granted benefits). The Court also observed in *Gardner–Denver* that labor arbitrators who conduct grievance procedures are charged with interpreting and applying private contracts, not federal statutes. In light of this lack of expertise and legal authority, the Court concluded that labor arbitrators should not be entrusted with the enforcement of employees' rights under Title VII. *See Gardner–Denver,* 415 U.S. at 52–54, 94 S.Ct. at 1021–22; *see also Barrentine,* 450 U.S. at 743, 101 S.Ct. at 1446 (arbitrator "may lack the competence to decide the ultimate legal issue" and "may not have the contractual authority to do so"). In sum, the decision in *Gardner–Denver* was grounded in a concern about the dangers that collective-bargaining agreements might pose to individual employees' statutory rights.

There is nothing in *Gilmer* to suggest that the Court abandoned or even reconsidered its efforts to protect individual statutory rights from the give-and-take of the collective-bargaining process. It is true, of course, that *Gilmer* permits employees individually to enter contracts under which they agree to submit statutory claims to arbitration.[5] Indeed, *Gilmer* apparently requires courts to presume that an agreement to arbitrate "any dispute, claim, or controversy" obligates an employee to arbitrate statutory as well as contractual claims. *See Gilmer,* —— U.S. at ——, 111 S.Ct. at 1650. But the Court went out of its way in *Gilmer* to contrast its holding in that case with its holdings in *Gardner–Denver, Barrentine,* and *McDonald:* the court noted, among other things, that an important concern in those

---

5. In holding that employees individually *may* agree to arbitrate statutory claims, the Court did not hold that such agreements are *always* enforceable. Consequently, the courts must "remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any

contract.'" *Gilmer,* —— U.S. at ——, *111* S.Ct. at 1656 (quoting *Mitsubishi Motors Corp.,* 473 U.S. at 627, 105 S.Ct. at 3354). *See Laniok v. Advisory Committee of the Brainerd Manufacturing Company Pension Plan,* 935 F.2d 1360, 1365 (2d Cir.1991) (noting that waiver of Title VII claims is enforceable only if "knowing and voluntary").

cases "was the tension between collective representation and individual statutory rights, a concern not applicable to the present case." *Gilmer*, —— U.S. at ——, 111 S.Ct. at 1657. In recognizing this distinction, the Court made it clear that its holding in *Gilmer* simply applied to contracts made by employees individually. Consequently, *Gilmer* does not alter or undermine the protection established in *Gardner–Denver* against waiver of individual statutory rights through collective-bargaining agreements. *See E.E.O.C. v. Board of Governors of State Colleges & Universities*, 957 F.2d 424, 431 (7th Cir.1992) (holding that "it is well-established that unions cannot waive employees' ADEA or Title VII rights through collective bargaining").

In sum, the court concludes that a collective-bargaining agreement cannot—at least as a general matter—require an employee to arbitrate individual statutory claims.[6] Accordingly, the plaintiff's failure to exhaust the available grievance procedures does not bar her Title VII claims. This holding is consistent with the conclusions of other courts that have considered the same issue. *See Sewell v. New York City Transit Authority*, 809 F.Supp. 208, 215 (E.D.N.Y.1992) (holding that public employee who pursued state-law grievance procedure was not thereby barred from bringing Title VII claim); *see also Hilliard v. National Council of Senior Citizens*, 1992 U.S. Dist. LEXIS 7493, at *6 (D.D.C. May 21, 1992) (holding that employee who pursued grievance procedure was not

thereby barred from bringing Title VII gender-discrimination claim).[7] In light of this ruling, the defendants' motion for summary judgment on the Title VII claims must be denied.

B. *Title VII Claims: Availability of Damages.*

■ The defendants also seek summary judgment on the plaintiff's Title VII claims to the extent that the plaintiff seeks compensatory or punitive damages or damages for pain and suffering.[8] The Civil Rights Act of 1991 ("the 1991 Act"), which took effect on November 21, 1991, provides that compensatory damages may be awarded in Title VII actions in some circumstances. *See* 42 U.S.C. § 1981a(a)(1). It is now the law of this Circuit, however, that the provisions of the 1991 Act should not be applied retroactively. *See Butts v. New York City Department of Housing Preservation and Development*, 990 F.2d 1397 (2d Cir.1993); *see also Johnson v. Uncle Ben's, Inc.*, 965 F.2d 1363, 1373–74 (5th Cir.1992); *Mozee v. American Commercial Marine Service Co.*, 963 F.2d 929, 940 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 207, 121 L.Ed.2d 148 (1992); *Fray v. Omaha World Herald Co.*, 960 F.2d 1370, 1378 (8th Cir.1992); *Vogel v. Cincinnati*, 959 F.2d 594, 598 (6th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 86, 121 L.Ed.2d 49 (1992). *But see Davis v. San Francisco*, 976 F.2d 1536, 1549–56 (9th Cir. 1992) (applying retroactively the portion of

---

**6.** The concerns expressed in *Gardner–Denver* and *Barrentine* strongly suggest that a collective-bargaining agreement can *never* require employees to submit individual statutory claims to grievance procedures. It is possible, however, to adopt a more limited view of the Court's holdings in those cases. Under this view, the exclusion of individual statutory claims from the collective-bargaining process would take the form of a rebuttable presumption rather than an absolute requirement: that is, the courts would assume that individual statutory claims were excluded from grievance procedures *unless* the collective-bargaining agreement expressly provided otherwise. This view has the virtue of providing substantial protection for individual employees while recognizing that there may be circumstances in which the concerns expressed in *Gardner–Denver* and *Barrentine* are irrelevant or inapplicable. In any event, it is unnecessary to resolve this issue here. The defendants have not

drawn the court's attention to any provision of the collective-bargaining agreement in this case that could constitute an express waiver of the plaintiff's statutory claims. Indeed, as noted below, the defendants have not properly made the collective-bargaining agreement a part of the record. *See* note 19, *infra*.

**7.** One decision in this District has taken a contrary position. *See Lagrone v. Tomasso*, Civil No. 2:91–513 (PCD), slip op., at 3–4 (D.Conn. July 7, 1992) (holding that failure to exhaust grievance procedures available under collective-bargaining agreement *does* bar Title VII action). With respect, and for the reasons stated above, this court declines to adopt the holding in *Lagrone*.

**8.** *See* Memorandum in Support of Defendants' Motion for Partial Summary Judgment (filed June 12, 1992) ("Defendants' June 12 Memorandum") at 20.

the statute governing expert witness fees). Although the 1991 Act cannot be given retroactive effect in this case, the plaintiff may, of course, receive a monetary award for back pay (together with prejudgment interest) if she prevails on her Title VII claims. In addition, the plaintiff may receive compensatory or punitive damages if she prevails on her state law claims. But the plaintiff is not entitled in this action to any damages on the basis of her Title VII claims. For this reason, the defendants' motion for summary judgment on the plaintiff's claims for damages under Title VII must be granted.

## II

The defendants seek summary judgment on all of the plaintiff's state law claims based on the exclusivity provisions of the Connecticut Workers Compensation Act ("CWCA"), Conn.Gen.Stat. §§ 31–284(a) and 31–293a,[9] and on the preemptive effect of Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.[10] I shall consider each of the plaintiff's state law claims in turn.

### A. *Wrongful Discharge and Retaliatory Discharge.*

The Amended Complaint, which was filed on July 31, 1992, alleges that the defendants' actions and omissions caused the plaintiff to leave the employment of Moliterno Stone and amounted to a wrongful discharge under Connecticut common law.[11] The Amended Complaint also alleges that the defendants discharged the plaintiff in retaliation for her exercise of her rights of free speech and freedom of association, in violation of Conn. Gen.Stat. 31–51q.[12] The defendants' Supplemental Motion for Summary Judgment, which was filed on September 8, 1992, does not address the wrongful-discharge or retaliatory-discharge claims. However, the defendants' earlier Motion for Partial Summary Judgment, which was filed on June 12, 1992, did seek summary judgment on all of the plaintiff's state law claims on the ground that those claims are barred by the CWCA and the LMRA.[13] In light of this earlier motion, the court finds that the defendants have properly moved for summary judgment on the wrongful-discharge and retaliatory-discharge claims. Nevertheless, the defen-

---

9. Conn.Gen.Stat. § 31–284(a) provides in pertinent part that

   [a]n employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees [for such injuries]. . . . Conn.Gen.Stat. § 31–293a provides in pertinent part that

   [i]f an employee or, in the case of his death, his dependent has a right to benefits or compensation under this chapter on account of injury or death from injury caused by the negligence or wrong of a fellow employee, such right shall be the exclusive remedy of such injured employee or dependent and no action may be brought against such fellow employee unless such wrong was wilful or malicious or the action is based on the fellow employee's negligence in the operation of a motor vehicle. . . .

10. 29 U.S.C. § 185 provides in pertinent part that

    [s]uits for violation of contracts between an employee and a labor organization representing employees in an industry affecting interstate commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United

States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

11. *See* Amended Complaint at ¶ 24–1. This claim is based on the Connecticut Supreme Court's holding in *Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 427 A.2d 385 (1980). Under *Sheets*, a former employee can prevail on a wrongful-discharge claim if she can prove "a demonstrably *improper* reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." *Sheets*, 179 Conn. at 485, 427 A.2d 385 (emphasis in original).

12. *See* Amended Complaint at ¶ 24–2. This claim is based on Conn.Gen.Stat. § 31–51q, which provides in pertinent part that

    [a]ny employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4, or 14 of article first of the constitution of the state . . . shall be liable to such employee for damages caused by such discipline or discharge. . . .

13. *See* Defendants' June 12 Memorandum at 21.

dants' motion for summary judgment on these claims must be denied.

### 1. Preclusion of Claims by CWCA.

■ The CWCA protects employers against liability in tort for personal injuries "arising out of or in the course of [the plaintiff's] employment or on account of death resulting from personal injury so sustained." Conn.Gen.Stat. § 31–284(a). In light of this language, it appears that the CWCA does not apply to injuries arising out of the *discharge* of an employee. This view of the statute is supported by the weight of authority among the Connecticut state courts. *See Fulco v. Norwich Roman Catholic Diocesan Corp.,* 27 Conn.App. 800, 808, 609 A.2d 1034 (1992) (holding that "it would unduly strain the language of the statute for us to conclude that termination of employment creates a job related injury"); *see also Sullivan v. Griffin Health Services Corp.,* Civil No. CV–90030911S, 1990 WL 283704 (Connecticut Superior Court for the Judicial District of Ansonia/Milford) (September 25, 1990) (holding that CWCA does not bar claim for negligent infliction of emotional distress arising out of employee's termination). In light of these persuasive authorities and the clear language of the statute, the court concludes that the CWCA does not bar actions for damages based on an employee's termination.

The fact that the plaintiff here has alleged that she was constructively discharged, rather than expressly fired, does not change the result in this case. Regardless of the manner in which the discharge was effectuated, the fact remains that under Connecticut law the discharge is deemed to have occurred after the plaintiff's term of employment ended. *See Fulco,* 27 Conn.App. at 804, 609 A.2d 1034. Consequently, the claims based on the discharge fall beyond the scope of the CWCA. It should be noted, however, that if the plaintiff prevails on the discharge claim she would be entitled to damages for the discharge itself—that is, for the pecuniary and non-pecuniary costs of losing her job and of being forced to find new employment. The plaintiff would not be entitled, based on the discharge claims, to obtain compensation for the injuries that occurred during her employment and that gave rise to the discharge—for example, the defendants' words and actions on the job site.

### 2. Preemption of Claims by Section 301 of LMRA.

■ Section 301 of the LMRA preempts state law claims to the extent that the resolution of those claims "is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985). The preemptive effect of Section 301 is broad, but the Supreme Court has been careful to note that Section 301 does not preempt state law claims that simply require courts to consider the same *factual* issues that would be raised by claims under a collective-bargaining agreement. *See Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 409, 108 S.Ct. 1877, 1883, 100 L.Ed.2d 410 (1988) (holding that Section 301 does not preempt retaliatory discharge claim brought under Illinois law). In *Lingle,* the Court stated that Section 301 preemption

> merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements. In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.

*Id.*

The Court's decision in *Lingle* is directly applicable here. While the plaintiff's wrongful-discharge and retaliatory-discharge claims do implicate factual issues that would be raised by a claim for breach of the bargaining agreement, these claims do not require the court to evaluate the terms of the bargaining agreement itself. The plaintiff is not claiming that the discharge was wrongful because the defendants failed to follow a

procedure prescribed by the employment contract, nor is she claiming that the contract itself gave her a right not to be discharged in retaliation for the exercise of free-speech rights. Instead, the plaintiff is claiming that the alleged discharge violated her rights under Connecticut law. The plaintiff contends that wrongful discharge is actionable under Connecticut common law [14] and that discharge in retaliation for the exercise of free-speech rights is actionable under Connecticut statutory law.[15] Because these claims do not require the court to interpret the terms of the collective-bargaining agreement itself, they are not preempted by Section 301 of the LMRA.

For the foregoing reasons, the CWCA and the LMRA do not bar the plaintiff's wrongful-discharge and retaliatory-discharge claims. Furthermore, the defendants have not argued, much less shown, that they are entitled to summary judgment on the merits of these claims as a matter of law based on the undisputed facts in the record. Accordingly, the motion for summary judgment must be denied with respect to the plaintiff's wrongful-discharge and retaliatory-discharge claims.

### B. *Breach of Contract and Breach of Promise.*

The Amended Complaint, which was filed on July 31, 1992, alleges that the defendants breached their contract of employment with the plaintiff by failing to provide a safe working environment free from tortious conduct.[16]

The Amended Complaint also alleges that the defendants breached a promise to the plaintiff to provide a safe working environment.[17] The defendants' Supplemental Motion for Summary Judgment, which was filed on September 8, 1992, does not address the breach-of-contract and breach-of-promise claims. However, the defendants' earlier Motion for Partial Summary Judgment, which was filed on June 12, 1992, did seek summary judgment on all of the plaintiff's state law claims on the ground that those claims are barred by the CWCA and by Section 301 of the LMRA.[18] In light of this earlier motion, the court finds that the defendants have properly moved for summary judgment on the wrongful discharge and retaliatory discharge claims.

■ The defendants' motion for summary judgment must be granted with respect to the plaintiff's claim for breach of employment contract. As noted above, Section 301 of the LMRA preempts state law claims to the extent that the resolution of those claims "is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis–Chalmers Corp.*, 471 U.S. at 220, 105 S.Ct. at 1916. The plaintiff has admitted that she was subject to a collective-bargaining agreement during the time in which she was employed by Moliterno Stone;[19] indeed, the "contract" to which the plaintiff refers in her breach-of-contract claim appears to be the collective-bargaining agreement itself. Because the

---

14. *See* note 11, *supra.*

15. *See* note 12, *supra.*

16. *See* Amended Complaint at ¶ 25.

17. *See* Amended Complaint at ¶ 26.

18. *See* Defendants' September 8 Memorandum at 21.

19. *See* Response No. 40, Plaintiff's Responses to Requests for Admission of Defendants Moliterno Stone Sales, Inc., Kenneth Castellucci, Joseph DeGirolamo, and George Craemer (filed June 12, 1992), at 10. Because the only issue here is whether the plaintiff's claims can be decided *without* reference to the collective-bargaining agreement, there is no need for the court to consider the terms and conditions of the collective-bargaining agreement itself. It should be noted, however, that in any event the defendants have not properly made the collective-bargaining agreement a part of the record. The defendants first attempted to place a copy of the bargaining agreement in the record on March 16, 1993, one day after oral argument on the summary judgment motions—and more than nine months after the defendants' first summary judgment motion was filed. Moreover, the defendants never produced a copy of the agreement in response to the plaintiff's requests for production during the course of discovery. Finally, the defendants have not yet properly authenticated the copy of the agreement that they did submit. For these reasons, the plaintiff's Objection to Defendants' Amendment of Motion for Summary Judgment (filed March 26, 1993) (objecting to incorporation of collective-bargaining agreement) must be sustained. *See also* note 6, *supra.*

plaintiff's breach-of-contract claim would require the court to interpret the terms of a collective-bargaining agreement, this claim is clearly preempted by Section 301 of the LMRA.

■ The defendants' motion for summary judgment must also be granted with respect to the plaintiff's claim for breach of promise. While this claim could have been set forth with greater precision, it appears that the plaintiff intended to allege that the defendants violated an oral agreement that was independent of the collective-bargaining agreement. Assuming that this is the case, the plaintiff's breach-of-promise claim would not be based directly on the collective-bargaining agreement. Even so, a determination of the validity of the breach-of-promise claim would require the court to consult the collective-bargaining agreement to determine whether that agreement was intended to be the sole agreement between the parties. Because the plaintiff could not prevail on her breach-of-promise claim without an interpretation of the collective-bargaining agreement, the claim is preempted by Section 301 of the LMRA.

Accordingly, summary judgment must be granted on the plaintiff's breach-of-contract and breach-of-promise claims.

## C. Intentional Torts and Negligence.

The Amended Complaint alleges that Moliterno Stone and Castellucci intentionally failed to prevent the injuries inflicted on the plaintiff by the other defendants [20] and that they were negligent in hiring and employing those defendants.[21] It also alleges that DeGirolamo and Craemer committed the intentional torts of intentional infliction of emotional distress [22] and assault and battery.[23] In addition, the Amended Complaint alleges that all four of these defendants negligently misrepresented to the plaintiff "that she would be free from the injury and suffering" that she later experienced while employed by Moliterno Stone.[24] The defendants moved for summary judgment on these state law claims in their Motion for Partial Summary Judgment.[25] Upon review of the CWCA and Section 301 of the LMRA, the court concludes that the motion for summary judgment on the intentional-tort and negligence claims must be granted as to Moliterno Stone; granted in part and denied in part as to Castellucci; and granted in part and denied in part as to Craemer and DeGirolamo.

### 1. Moliterno Stone.

The motion for summary judgment on the intentional-tort and negligence claims must be granted as to Moliterno Stone based on the exclusivity provisions of the CWCA.

#### a. Intentional–Tort Claims against Moliterno Stone.

■ The CWCA bars the plaintiff's intentional-tort claims against Moliterno Stone. The CWCA establishes broad protection for employers against liability for injuries suffered by employees during the course of employment. See Conn.Gen.Stat. § 31–284(a). Under this statute, an employer is generally entitled to view the commission of an intentional tort—even by a supervisor or foreman—as "an injury arising out of or in the course of employment, 'another industrial mishap in the factory' " of the sort exclusively covered by the workers' compensation system. See Jett v. Dunlap, 179 Conn. 215, 218, 425 A.2d 1263 (1979). The Connecticut Supreme Court has held, however, that an em-

---

20. *See* Amended Complaint at ¶ 27 and 29.

21. *See* Amended Complaint at ¶ 34.

22. *See* Amended Complaint at ¶ 27.

23. *See* Amended Complaint at ¶ 28.

24. *See* Amended Complaint at ¶¶ 35 and 36. Paragraph 35 of the Amended Complaint alleges that the defendants "represent[ed] or impl[ied] to the plaintiff that she would be free from such injury and suffering as aforedescribed" and alleges that "the defendants knew or should have known such representations were false and said representations were fraudulent." This claim shall be treated as a claim for negligent misrepresentation, rather than intentional misrepresentation, in light of the fact that the plaintiff has simply alleged that the defendants "knew or should have known" that the representations made to the plaintiff were false.

25. *See* Defendants' June 12 Memorandum at 4–15 (discussing CWCA) and at 15–20 (discussing LMRA).

ployer *is* liable for intentional torts committed by an employee if (1) the employer "directed or authorized" the employee to commit the tort or (2) the employee who committed the tort is an "alter ego" of the corporation. *See id.* at 218–219, 425 A.2d 1263.

In articulating these exceptions, the Court emphasized that an employee should not be treated as an alter ego of the corporation simply because he is a supervisor or foreman. *Id.* Rather, an employee is to be treated as an alter ego of the corporation only if he "may be deemed the alter ego of the corporation under the standards governing disregard of the corporate entity." *Id.* Under Connecticut law, a court will disregard the corporate entity " 'only under exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate purpose, and [is] used primarily as an intermediary to perpetuate fraud and to promote injustice.' " *SFA Folio Collections, Inc. v. Bannon,* 217 Conn. 220, 230, 585 A.2d 666 (1991) (quoting *Angelo Tomasso, Inc. v. Armor Construction & Paving, Inc.,* 187 Conn. 544, 447 A.2d 406 (1982)).

Under these standards, the court concludes that summary judgment must be granted on the claims that attribute liability to Moliterno Stone for the intentional torts allegedly committed by the other defendants. The plaintiff has not alleged, much less shown, that Moliterno Stone "authorized" or "directed" any other persons to commit intentional torts against the plaintiff. The plaintiff does contend that Moliterno Stone knowingly permitted the intentional torts to take place,[26] but an employer cannot be held liable simply for "condoning" intentional torts committed by its employees. *See Jett,* 179 Conn. at 220, 425 A.2d 1263 (holding that "condoning [employees' intentional torts] is not an intentional tort on the part of the employer and does not relate back to it as such"). Furthermore, the plaintiff has not presented evidence from which it could be concluded that defendant DeGirolamo (or any other person) was the alter ego of Moliterno Stone "under the standards governing disregard of the corporate entity." *Jett,* 179 Conn. at 219, 425 A.2d 1263. Although the

plaintiff did assert at oral argument that DeGirolamo was an alter ego of Moliterno Stone, she based this assertion solely on the claim that DeGirolamo had full authority to speak on Moliterno Stone's behalf at the job site—not on the claim that Moliterno Stone itself was essentially a sham corporation. The plaintiff's allegation is therefore insufficient as a matter of law. *See SFA Folio Collections,* 217 Conn. at 230, 585 A.2d 666. Accordingly, summary judgment must be granted against the plaintiff to the extent that she seeks to hold Moliterno Stone liable for the other defendants' acts of intentional infliction of emotional distress or for their acts of assault and battery.

### b. *Negligence Claims against Moliterno Stone.*

■ The CWCA also bars the plaintiff's negligence claims against Moliterno Stone. The Connecticut Supreme Court has held that "to be outside the purview of § 31–284(a) [of the CWCA], the employer must have engaged in *intentional* misconduct, as that has been defined through our case law." *Perille v. Raybestos–Manhattan–Europe, Inc.,* 196 Conn. 529, 553, 494 A.2d 555 (1985). The CWCA provides the exclusive remedy when an employer's negligence or recklessness causes an employee to suffer a personal injury during the course of employment. Accordingly, the CWCA bars the plaintiff's claim against Moliterno Stone for negligence in hiring and employing the other defendants and for negligent misrepresentation.

### 2. Kenneth Castellucci.

The motion for summary judgment on the intentional-tort claim must be denied as to Castellucci because it is not barred by either the CWCA or Section 301 of the LMRA and it is not insufficient as a matter of law. The motion for summary judgment on the negligence claims must be granted because it is barred by the CWCA.

### a. *Intentional–Tort Claim against Castellucci.*

■ The CWCA does not bar the plaintiff's claim against Castellucci for intentional-

---

**26.** *See* Amended Complaint at ¶ 27.

ly failing to prevent the injuries inflicted on the plaintiff by the other defendants. Under the CWCA, an employee is liable for injuries caused to another employee if the wrong was "wilful and malicious." Conn.Gen.Stat. § 31–293a. The defining feature of a "wilful and malicious" injury is that the injury was caused by design; in other words, the plaintiff must show that the defendant intended to cause the injury that resulted. *See Nolan v. Borkowski*, 206 Conn. 495, 501, 538 A.2d 1031 (1988) (" 'A wilful or malicious injury is one caused by design. Wilfulness and malice alike import intent.' ") (quoting *Sharkey v. Skilton*, 83 Conn. 503, 507–508, 77 A. 950 (1910)). The defendant "intends" to cause not only the consequences that he actually desires but also "those which the actor believes are substantially certain to follow from what he does." *Mingachos v. CBS, Inc.*, 196 Conn. 91, 101, 491 A.2d 368 (1985). The plaintiff has alleged that Castellucci intentionally failed to take action to prevent the other defendants from abusing and harassing the plaintiff on the job site. Because the plaintiff has alleged that the Castellucci intended to cause the injury that resulted from his failure to act, the CWCA does not bar the intentional-tort claim against Castellucci.

■ Section 301 of the LMRA also presents no obstacle to the plaintiff's intentional-tort claim against Castellucci. Section 301 preempts state law claims only where those claims are substantially dependent on the interpretation of a collective-bargaining agreement. As noted earlier, this statute does not preempt state law claims simply because those claims require courts to consider the same *factual* issues that would be raised by claims under a collective-bargaining agreement. *See Lingle*, 486 U.S. at 409, 108 S.Ct. at 1883. Although the plaintiff's intentional-tort claim certainly may implicate many of the same factual issues that would be considered in a breach-of-contract action, the defendants have not argued, and the court does not find, that this claim would be "substantially dependent" on contract interpretation. Accordingly, Section 301 does not preempt the intentional-tort claim against Castellucci.

■ Finally, the undisputed facts in the record do not establish that Castellucci is entitled to judgment as a matter of law on the intentional-tort claim. The plaintiff has presented evidence that she informed Castellucci of the alleged harassment and that he took no action to investigate or prevent the abuse. While this may not be strong evidence of his intent, Castellucci's alleged failure to take action in response to the plaintiff's complaint would support a reasonable inference that Castellucci intended to permit the other defendants to cause injury to the plaintiff. In light of the genuine factual dispute about Castellucci's state of mind, the court concludes that Castellucci is not entitled to summary judgment on the claim that he intentionally failed to protect the plaintiff from injury.

### b. *Negligence Claims against Castellucci.*

■ Castellucci is entitled to summary judgment on the claim of negligence in hiring and employing the other defendants and on the claim of negligent misrepresentation. The CWCA expressly protects employees from liability for injuries caused by negligence or even recklessness; as noted above, an employee can be held liable for injuring a fellow employee only where the injury itself was intended. *See* Conn.Gen.Stat. § 31–293a (providing that CWCA is exclusive remedy for harm done to fellow employee unless such harm is "wilful and malicious"). Based on the express terms of the CWCA, it is clear that the statute precludes the plaintiff from asserting negligence claims against Castellucci for injuries caused during the course of the plaintiff's employment. Accordingly, summary judgment must be granted for Castellucci on the plaintiff's negligence claims.

### 3. Joseph DeGirolamo and George Craemer.

The motion for summary judgment on the intentional-tort claims against DeGirolamo and Craemer—which allege intentional infliction of emotional distress and assault and battery—must be denied because these claims are not barred by either the CWCA or Section 301 of the LMRA and they are not insufficient as a matter of law. The motion for summary judgment on the negligence

claims must be granted because those claims are barred by the CWCA.

### a. Intentional–Tort Claims against DeGirolamo and Craemer.

■ The intentional-tort claims against DeGirolamo and Craemer are not barred by the CWCA or by Section 301 of the LMRA and they are not insufficient as a matter of law. First, as noted above, an employee can be held liable in tort for injuring a fellow employee when he intended to cause that injury. See Nolan, 206 Conn. at 501, 538 A.2d 1031 (defining "wilful and malicious" act as one that was intended to cause the injury that resulted). The plaintiff has alleged that DeGirolamo and Craemer committed the tort of intentional infliction of emotional distress and the tort of assault and battery. These torts, by definition, require the plaintiff to establish that the defendants intended to commit the harms that resulted. As a result, the CWCA does not preclude the plaintiff from bringing these claims against the defendants.

■ Second, Section 301 of the LMRA does not preempt the intentional-tort claims against DeGirolamo and Craemer. The plaintiff has alleged the torts of intentional infliction of emotional distress and assault and battery, both of which can be resolved without reference to the terms and conditions of the collective-bargaining agreement. See Lingle, 486 U.S. at 409, 108 S.Ct. at 1883.

■ Finally, there is ample evidence in the record to support the claim that DeGirolamo and Craemer engaged in a series of demeaning and abusive practices directed at the plaintiff. This evidence could permit a reasonable person to conclude that the alleged intentional torts were committed. Accordingly, the motion for summary judgment must be denied with respect to defendants DeGirolamo and Craemer on the plaintiff's intentional-tort claims.

### b. Negligence Claims against DeGirolamo and Craemer.

DeGirolamo and Craemer are entitled to summary judgment on the claim of negligent misrepresentation. As noted above, the CWCA expressly protects employees from liability for injuries caused by negligence or even recklessness. See Conn.Gen.Stat. § 31–293a (providing that CWCA is exclusive remedy for harm done to fellow employee unless such harm is "wilful and malicious"). For this reason, DeGirolamo and Craemer are entitled to summary judgment on the claim for negligent misrepresentation.

### D. Abuse of Process.

■ The Amended Complaint, which was filed July 31, 1992, seeks to hold defendants Moliterno Stone and Castellucci liable for abuse of process, based on the counterclaim filed by those defendants in this action on November 9, 1990.[27] The defendants' Supplemental Motion for Summary Judgment, which was filed on September 8, 1992, does not address the abuse-of-process claim. However, the defendants' earlier Motion for Partial Summary Judgment, which was filed on June 12, 1992, did seek summary judgment on all of the plaintiff's state law claims on grounds that those claims are barred by the CWCA and Section 301 of the LMRA.[28] In light of this earlier motion, the court finds that the defendants have properly moved for summary judgment on the wrongful-discharge and retaliatory-discharge claims.

The defendants' motion for summary judgment on this claim must be denied. First, the CWCA does not bar this claim because the CWCA applies only to injuries suffered during the course of employment. See Conn. Gen.Stat. § 31–284(a). It is clear that the counterclaim filed in this action was brought well after the plaintiff's term of employment had ended. Second, Section 301 of the LMRA does not bar this claim because the claim for abuse of process is not "substantially dependent" on an interpretation of the terms of the collective-bargaining agreement. See Allis–Chalmers Corp., 471 U.S. at 220, 105 S.Ct. at 1915. To prevail on her abuse-of-process claim, the plaintiff would have to show that the defendants brought their counterclaim in bad faith. The defendants have

---

**27.** See Amended Complaint at ¶ 37.

**28.** See Defendants' June 12 Memorandum at 21.

not presented evidence from which it could reasonably be concluded that the plaintiff would need to rely on the collective-bargaining agreement in order to make that showing.

For the foregoing reasons, the CWCA and the LMRA do not bar the plaintiff's abuse-of-process claim. Furthermore, the defendants have not argued, much less shown, that they are entitled to summary judgment on the merits of this claim as a matter of law based on the undisputed facts in the record. Accordingly, the motion for summary judgment must be denied with respect to the plaintiff's abuse-of-process claim against Moliterno Stone and Castellucci.

## III

Finally, the Amended Complaint alleges that the four moving defendants conspired with the two non-moving defendants to deprive the plaintiff of her civil rights, in violation of 42 U.S.C. § 1985.[29] The defendants' Supplemental Motion for Summary Judgment (filed September 8, 1992) seeks summary judgment against "the remaining portions of the plaintiff's claims"[30] but the defendants have provided no argument in support of their motion with respect to the claim under 42 U.S.C. § 1985. Accordingly, the defendants' motion for summary judgment on this claim must be denied.

## CONCLUSION

To summarize: the defendants' motion for summary judgment is

(1) DENIED with respect to the claims of employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2(a) and 2000e–3;

(2) GRANTED with respect to any request by the plaintiff for compensatory or punitive damages or damages for pain and suffering on the Title VII claims;

(3) DENIED with respect to the wrongful-discharge and retaliatory-discharge claims against all four moving defendants;

(4) GRANTED with respect to the breach-of-contract and breach-of-promise claims against all four defendants;

(5) GRANTED with respect to the intentional-tort claims and negligence claims against Moliterno Stone;

(6) DENIED with respect to the intentional-tort claims against Castellucci but GRANTED with respect to the negligence claims against Castellucci;

(7) DENIED with respect to the intentional-tort claims against DeGirolamo and Craemer but GRANTED with respect to the negligence claims against DeGirolamo and Craemer;

(8) DENIED with respect to the abuse-of-process claim against Moliterno Stone and Castellucci; and

(9) DENIED with respect to the conspiracy claim under 42 U.S.C. § 1985.

For the reasons stated above, the defendants' Motion for Partial Summary Judgment (filed June 12, 1992) (doc. # 100) and the defendants' Supplemental Motion for Summary Judgment (filed September 8, 1992) (doc. # 110) are GRANTED in part and DENIED in part.

Furthermore, for the reasons stated above, the plaintiff's Objection to Defendants' Amendment of Motion for Summary Judgment (filed March 26, 1993) (doc. # 134) is SUSTAINED.

It is so ordered.

---

29. *See* Amended Complaint at ¶ 38. This claim is based on 42 U.S.C. § 1985(c), which provides in pertinent part that

> [i]f two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property ... the party so injured shall have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

30. *See* Defendants' September 8 Memorandum at 1.