**Kenneth W. BLOCK, Plaintiff,**

v.

**ART IRON, INC., Defendant.**

**Civ. No. 1:94cv117.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Oct. 19, 1994.

---

Kathryn A. Brogan and Patrick L. Proctor, Warsco and Brogan, Fort Wayne, IN, for plaintiff.

Thomas M. Kimbrough, Barrett and McNagny, Fort Wayne, IN, and Ruth A. Meacham, and Jennifer J. Dawson, Marshall and Melhorn, Toledo, OH, for defendant.

### *ORDER*

WILLIAM C. LEE, District Judge.

This matter is before the court on a motion for summary judgment filed by the defendant, Art Iron, Inc. ("Art Iron"), on August 1, 1994. The parties completed briefing the motion on August 24, 1994. For the following reasons, the motion will be denied.

### *Summary Judgment*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir. 1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* 477 U.S. at 252, 106 S.Ct. at 2512; *In Matter of Wildman,* 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan,* 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204,* 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt,* 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.,* 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In ruling on a summary judgment motion the court accepts as true the non-moving party's evi-

dence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson*, 477 U.S. at 249–251, 106 S.Ct. at 2511. However, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank*, 704 F.2d 361, 367 (7th Cir.1983).

■■■■ Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Id.* 477 U.S. at 248, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.*, 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252, 106 S.Ct. at 2512.

### Discussion

Plaintiff, Kenneth W. Block ("Block"), filed this action against Art Iron on April 22, 1994, alleging that Art Iron's acts, practices, and conduct with respect to Block's employment with Art Iron violated Block's civil and statutory rights as provided in the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*

In support of its motion for summary judgment, Art Iron states that the following facts are undisputed. Block is a member of the Shopmen's Local Union No. 726 of the International Association of Bridge, Structural and Ornamental Iron Workers ("Union"). As a Union member, Block is covered by the collective bargaining agreement ("CBA") entered into between the Union and Art Iron. While an employee of Art Iron, Block developed carpal tunnel syndrome. After developing carpal tunnel syndrome, Block did not perform any work for Art Iron for a period of twelve consecutive months and was terminated. After being terminated, Block filed a grievance pursuant to the CBA alleging that the termination constituted a discriminatory act and seeking reversal of Art Iron's decision to terminate his employment. The three-step grievance procedure resulted in a finding of no contract violation.

The CBA contains an arbitration clause which states, in part, that:

> (A) Any grievance or dispute between the Company and the Union or between the Company and an employee(s) that has been processed in accordance with the provisions of the preceding section of this agreement but not satisfactorily settled shall, upon the written request of either party to this agreement, be submitted to arbitration by an impartial arbitrator to be selected by mutual agreement of the parties.

CBA at 20. The Union initiated, but later withdrew, its request to arbitrate Block's dispute.

■■■■ In support of its motion, Art Iron argues that it is entitled to summary judgment because Block failed to comply with the arbitration provision of the CBA. Art Iron relies on *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), and *Austin v. Owens-Brockway Glass Container*, 844 F.Supp. 1103 (W.D.Va.1994). Before discussing *Gilmer* and *Austin*, a discussion of earlier Supreme Court case law on the issue of enforcement of arbitration clauses in collective bargaining agreements is appropriate.

The leading Supreme Court case is *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). In *Gardner–Denver*, the Court permitted an employee who had exhausted grievance procedures available under a collective bargaining agreement to bring a Title VII claim into federal court without requiring deference to

the arbitral decision against him. *Id.* at 48, 94 S.Ct. at 1020. The Court stated that:

> We are also unable to accept the proposition that petitioner waived his cause of action under Title VII. To begin, we think it clear that there can be no prospective waiver of an employee's rights under Title VII. It is true, of course, that a union may waive certain statutory rights related to collective activity, such as the right to strike. (Citations omitted). These rights are conferred on employees collectively to foster the processes of bargaining and properly may be exercised or relinquished by the union as collective-bargaining agent to obtain economic benefits for union members. Title VII, on the other hand, stands on plainly different ground; it concerns not majoritarian processes, but an individual's right to equal employment opportunities. *Title VII's strictures are absolute and represent a congressional command that each employee be free from discriminatory practices. Of necessity, the rights conferred can form no part of the collective-bargaining process since waiver of these rights would defeat the paramount congressional purpose behind Title VII.* (Emphasis added). In these circumstances, an employee's rights under Title VII are not susceptible of prospective waiver. (Citations omitted).

> The actual submission of petitioner's grievance to arbitration in the present case does not alter the situation. Although presumably an employee may waive his cause of action under Title VII as part of a voluntary settlement, mere resort to the arbitral forum to enforce contractual rights constitutes no such waiver. (Footnote omitted). Since Title VII may not be waived prospectively, existing contractual rights and remedies against discrimination must result from other concessions already made by the union as part of the economic bargain struck with the employer. It is settled law that no additional concession may be exacted from any employee as the

price for enforcing those rights. (Citation omitted).

*Id.* at 51–52, 94 S.Ct. at 1021–22.

Later, in *Barrentine v. Arkansas–Best Freight Sys., Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), the Supreme Court refused to conclude that arbitration barred plaintiffs from bringing to federal court their claim that their employer violated the minimum wage provision of the Fair Labor Standards Act. The *Barrentine* Court stressed that grievance procedures under collective bargaining agreements protect only contractual rights. *Id.* at 736, 101 S.Ct. at 1443. Likewise, in *McDonald v. West Branch,* 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984), the Court concluded that there was no res judicata or collateral estoppel effect from an arbitral award pursuant to a collective bargaining agreement such that a subsequent § 1983 action would be barred. *Id.* at 288, 104 S.Ct. at 1802.

More recently, the Supreme Court decided *Gilmer.* The question presented in *Gilmer* was whether Gilmer's claim under the Age Discrimination in Employment Act ("ADEA") could be subjected to compulsory arbitration pursuant to an arbitration agreement in a securities registration application[1]. After discussing the purpose of the Federal Arbitration Act ("FAA"), the Supreme Court stated that "[i]t is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." *Gilmer,* 500 U.S. at 26, 111 S.Ct. at 1652 (citations omitted). The Supreme Court then explained why its decision in *Gardner–Denver* and its progeny—*Barrentine* and *McDonald*—did not support the plaintiff's argument that he had a right to bring his discrimination claim directly to federal court, rather than being required to arbitrate his claim. The Court stated:

> There are several important distinctions between the *Gardner–Denver* line of cases and the case before us. First, those cases did not involve the issue of the enforceabil-

---

1. Gilmer, by registering with the New York Stock Exchange, agreed to abide by NYSE Rule 347, which provides for arbitration of "[a]ny controversy between a registered representative and any member or member organization *arising out*

*of the employment or termination of employment of such registered representative.* (Emphasis added). *Gilmer,* 500 U.S. at 23, 111 S.Ct. at 1650–51.

ity of an agreement to arbitrate statutory claims. Rather, they involved the quite different issue whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims. Since the employees there had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, the arbitration in those cases understandably was not held to preclude subsequent statutory actions. Second, *because the arbitration in those cases occurred in the context of a collective-bargaining agreement, the claimants there were represented by their unions in the arbitration proceedings. An important concern therefore was the tension between collective representation and individual statutory rights, a concern not applicable to the present case.* (Emphasis added). Finally, those cases were not decided under the FAA, which, as discussed above, reflects a "liberal federal policy favoring arbitration agreements." *Mitsubishi [Motors Corp. v. Soler Chrysler–Plymouth* ], 473 U.S. [614], at 625, 105 S.Ct. [3346], at 3353 [87 L.Ed.2d 444 (1985) ]. Therefore, those cases provide no basis for refusing to enforce Gilmer's agreement to arbitrate his ADEA claim.

500 U.S. at 35, 111 S.Ct., at 1657.

In a case similar to the present case, *Austin v. Owens–Brockway Glass, supra,* the plaintiff attempted to sue her former employer for alleged violations of the ADA. The employer argued that the complaint should be dismissed because the plaintiff failed to use the grievance-arbitration procedure set forth in the collective bargaining agreement between the employer and the company union. This CBA provided that disputes under the CBA were to be governed by a grievance procedure which provided for the compulsory submission of all disputed claims to a neutral third party arbitrator whose decision was to be final and binding upon the parties. 844 F.Supp. at 1106.

The district court for the Western District of Virginia ruled that:

The April 1, 1993–March 31, 1996 contract governs this dispute and it provides specifically for grievance procedures (see Arti-

cles 31 and 38) to be utilized to resolve disputes under the ADA. Article 31 at page 68 of the Union Shop Contract states that "any disputes under this article ... shall be subject to the grievance procedure." Because plaintiff's complaint was subject to mandatory arbitration, the *Gilmer* line of cases applies here. Accordingly, because plaintiff did not utilize the grievance procedures available in the April 1, 1993–March 31, 1996 Union Shop Contract, Summary Judgment will be granted in favor of defendant.

*Id.* at 1106–07.

Art Iron argues to this court that the arbitration clause in the CBA specifically covers disputes between employer and employee, including discrimination claims and, therefore, like the *Austin* court, this court should find that Block is barred from bringing his discrimination claim to federal court.

Block strongly opposes Art Iron's motion for summary judgment and takes the position that the arbitration clause in the CBA is not applicable to his discrimination claims. Block argues that the grievance/arbitration provisions in the CBA only apply to disputes which arise "in connection with the application, interpretation, or alleged violation" of the CBA. Response Brief at 7, quoting the CBA at ¶ 19(C)(1).

Block further argues that, pursuant to *Gardner–Denver,* a CBA cannot require and employee to arbitrate individual statutory claims, and thus *Austin* is in conflict with clear and controlling Supreme Court precedent and should not be followed by this court. Specifically, Block points out that the *Austin* court failed to discuss *Gardner–Denver* and its progeny, and also failed to discuss the Supreme Court's distinction in *Gilmer* between arbitration provisions contained in collective bargaining agreements and those contained in individual contracts. Block has directed this court's attention to *Claps v. Moliterno Stone Sales, Inc.,* 819 F.Supp. 141, 147 (D.Conn.1993), in which the court held that "a collective-bargaining agreement cannot—at least as a general matter—require an employee to arbitrate individual statutory claims." The *Claps* court analyzed the holding in *Gilmer* as follows:

There is nothing in *Gilmer* to suggest that the court abandoned or even reconsidered its efforts to protect individual statutory rights from the give-and-take of the collective bargaining process. It is true, of course, that *Gilmer* permits employees individually to enter contracts under which they agree to submit statutory claims to arbitration. . . . But the court went out of its way in *Gilmer* to contrast its holding in that case with its holdings in *Gardner–Denver, Barrentine,* and *McDonald:* the court noted, among other things, that an important concern in those cases was the tension between collective representation and individual statutory rights, a concern not applicable to the [*Gilmer*] case. . . . Consequently, *Gilmer* does not alter or undermine the protection established in *Gardner–Denver* against waiver of individual statutory rights through collective bargaining agreements. See *EEOC v. Board of Governors of State Colleges & Universities,* 957 F.2d 424, 431 (7th Cir.1992) (holding that it is well established that unions cannot waive employees' ADEA or Title VII rights through collective bargaining).

*Claps, supra,* at 146–47.

Moreover, as Block further points out, the ADA's legislative history very strongly suggests that ADA claims may not be arbitrated in the absence of an express, voluntary waiver of the right to assert the claim in the courts. The Conference Committee Report on the ADA states:

It is the intent of the conferees that the use of alternative dispute resolution procedures is completely voluntary. *Under no condition would an arbitration clause in a collective bargaining agreement or employment contract prevent an individual from pursuing their rights under the ADA.*

*Report of Conference Committee on Americans With Disabilities Act: Joint Explanatory Statements,* H.Conf.Rep. No. 596, 101st Cong., 2d Sess., U.S.Code Cong. & Admin.News 1990, at pp. 267, 598 (1990), *reprinted in* 136 Cong.Rec. H4582, 4606 (daily ed. July 12, 1990) (emphasis added).

The Seventh Circuit Court of Appeals has stated that "*Gilmer* did not establish a grand

presumption in favor of arbitration; it interpreted and enforced the texts on which the parties had agreed." *Farrand v. Lutheran Brotherhood,* 993 F.2d 1253, 1255 (7th Cir. 1993). In *Farrand,* the Seventh Circuit noted that NYSE Rule 347, which was the basis for the Supreme Court's ruling in *Gilmer* that plaintiff's ADEA claim could be subjected to compulsory arbitration, provided for arbitration of "[a]ny controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative." *Id.* at 1254. As the Code of the National Association of Securities Dealers (NASD) lacked a similar rule, the Seventh Circuit held that the NASD did not authorize or require the arbitration of an employment dispute between a member of the NASD and one of the member's registered representatives. *Id.* at 1255.

In an earlier case from the Seventh Circuit, *EEOC v. Board of Governors of State Colleges and Universities,* 957 F.2d 424 (7th Cir.1992), the Court was called upon to decide whether a union could waive an employee's ADEA or Title VII rights through collective bargaining. The Court stated:

In sum, Section 4(d) [of the ADEA] prohibits policies that penalize employees who exercise their statutory rights under the ADEA. A collective bargaining agreement may not provide that grievances will proceed to arbitration only if the employee refrains from participating in protected activity under the ADEA. *Nor may the Board successfully argue that unions be permitted to waive an employee's rights under the ADEA, for it is well established that unions cannot waive employees' ADEA or Title VII rights through collective bargaining.* *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 737–739, 101 S.Ct. 1437, 1443–1444; *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 51, 94 S.Ct. 1011, 1021; *Bartman v. Allis–Chalmers Corporation,* 799 F.2d 311, 315 (7th Cir.1986), certiorari denied, 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987); *EEOC v. County of Calumet,* 686 F.2d 1249, 1256–1257 (7th Cir.1982). *While the Supreme Court recently held*

*that ADEA claims may, in some circumstances, be subject to compulsory arbitration, it expressly distinguished cases occurring "in the context of collective bargaining agreements." Gilmer v. Interstate/Johnson Lane Corp.,* [500] U.S. [20], [35], 111 S.Ct. 1647, 1657, 114 L.Ed.2d .26 (1991).

*Id.* at 431 and n. 11 (emphasis added).

These two cases make it clear that the Seventh Circuit reads *Gilmer* narrowly and would not approve of the *Austin* court's ruling insofar as it holds that ADA claims may be waived by way of general arbitration clauses in collective bargaining agreements. A review of the CBA in the present case reveals that, contrary to Art Iron's assertion, the CBA does not specifically provide that employees' statutory discrimination claims are subject to compulsory arbitration. Art Iron has referred this court to page 6 of the CBA in support of its assertion that the CBA specifically governs discrimination claims. Page 6 of the CBA (which is titled "Section 6" Management Prerogatives—Shop Rules) states, in pertinent part, that "the Company shall not discipline or discharge an employee except for proper cause, or otherwise improperly discriminate against an employee." This statement is not part of the arbitration clause, which is located in Section 20, page 20, of the CBA.

Moreover, Block has submitted copies of the union's grievance forms. These forms clearly limit grievances to contractual breaches of the CBA. When Block submitted these forms during the grievance/arbitration proceeding, Art Iron's decision was simply "no contract violation". Art Iron did not address Block's complaint that his civil rights had been violated. This is strong evidence that ADA claims are not governed by or subject to the grievance/arbitration provisions of the CBA.

■ In light of the foregoing, this court finds that Block's ADA claim is not governed by the arbitration clause of the CBA and Block is not precluded from pursuing his claim in federal court. Additionally, this court agrees with Block that a question of material fact exists as to whether Art Iron is estopped by its prior conduct from relying on

the arbitration clause. According to Block's affidavit, during a grievance meeting Art Iron's representative informed Block that the grievance meeting was not the proper forum to address Block's statutory civil rights claim. Block Aff. at 13. Additionally Block was informed that he would have to sue Art Iron in court if he wanted to pursue his civil rights claim. *Id.*

■ Art Iron does not deny that this statement was made to Block. Art Iron merely argues that since Block did not include a claim of equitable estoppel in his complaint, even after he was given leave to amend his complaint (for other reasons), Block may not now raise the issue in an attempt to defeat summary judgment. Art Iron has not provided this court with any authority supporting its argument that Block was required to raise his claim of equitable estoppel in his complaint. "Equitable estoppel is an equitable doctrine invoked to avoid injustice in particular cases." *Heckler v. Community Health Servs. of Crawford County, Inc.,* 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984). The doctrine of equitable estoppel is not, in itself, either a claim or a defense. Rather, it is a means of precluding a litigant from asserting an otherwise available claim or defense against a party who has detrimentally relied on that litigant's conduct. *Olsen v. United States,* 952 F.2d 236, 241 (8th Cir.1991); *ATC Petroleum, Inc. v. Sanders,* 860 F.2d 1104, 1111 (D.C.Cir.1988). A plaintiff seeking the benefit of equitable estoppel merely must have some claim, sounding in equity or in law, that otherwise entitles it to prevail against the defendant. *ATC Petroleum,* 860 F.2d at 1111. In the present case, Block has asserted a claim which, if proven, would entitle him to prevail against Art Iron. Thus, this court finds no reason to preclude Block from asserting the doctrine of equitable estoppel in response to Art Iron's motion for summary judgment. Thus, even if this court had found that the arbitration clause governed Block's ADA claim, Block has raised a genuine issue of material fact with respect to equitable estoppel, such that summary judgment could not be granted in favor of Art Iron.

## Conclusion

For all the foregoing reasons, Art Iron's motion for summary judgment is hereby DENIED.