**Nicholas DiPUCCIO, Plaintiff,**

v.

**UNITED PARCEL SERVICE, Defendant.**

**No. 1:94CV0162.**

United States District Court,
N.D. Ohio,
Western Division.

May 4, 1995.

William M. Wohl, Beachwood, OH, Julianne Pistone, Beachwood, OH, Wayne P. Marta, Cleveland, OH, for plaintiff.

Mark V. Webber, Carl E. Cormany, Bernard S. Goldfarb, Goldfarb & Reznick, Cleveland, OH, for defendant.

## MEMORANDUM & ORDER

CARR, District Judge.

This matter is before the court on defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56. For the following reasons, defendant's motion shall be granted in part and denied in part.

Plaintiff, a package car driver for defendant, worked under a collective bargaining agreement between defendant and Teamsters Local 407. He was injured in work-related accidents in 1989 and 1991. After surgery on his knees, he returned to work without restrictions.

On returning to work, plaintiff was supervised closely, including numerous "ride-

alongs" with his Center Supervisor and Center Manager. Defendant asserts that plaintiff was not using "safe work methods" such as lifting with his legs; plaintiff counters that lifting from a full squat caused him pain and that he was doing what was within his capabilities.

Due to perceived failures to work safely, defendant twice terminated plaintiff's employment without written warning. Both discharges were overturned by grievance proceedings, but plaintiff left UPS after the second proceeding to take a higher-paying job in Las Vegas as a train conductor.

At the first proceeding, plaintiff claimed that defendant discriminated against him on the basis of handicap. He was reinstated with back pay and ordered to follow management's instructions or provide medical documentation that he could not. At the second grievance proceeding, plaintiff alleged that he was terminated for reporting an assault on him by his supervisor. His discharge was reduced to a suspension.

As an initial matter, plaintiff argues that defendant's motion for summary judgment should be dismissed because of defendant's discovery abuse. One day after defendant's motion for summary judgment was filed, Chief Judge Lambros entered an order (Doc. 60) halting motion practice and discovery until the requirements of an August 26, 1994, order (Doc. 41) were met.

The requirements of the August order included allowing a telephonic deposition of defendant's president, Ken Nelson. That deposition has since been taken, and I conclude that Judge Lambros' order does not bar consideration of the summary judgment motion. Plaintiff's requests for dismissal of defendant's motion for summary judgment and for default, therefore, shall be overruled.

■ Defendant argues that plaintiff's Wrongful Discharge claim is preempted and governed by § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. §§ 185 *et seq.*, because it alleges that defendant discharged him without cause in violation of the collective bargaining agreement. Plaintiff has not plead that his union breached its duty of fair representation; therefore, according to defendant, the grievance procedures in the present case are binding as to his claim for wrongful discharge.

I agree that the two previous grievance proceedings have resolved the wrongfulness of plaintiff's discharge. After both proceedings, he was reinstated with back pay. These decisions certainly must have involved interpreting the collective bargaining agreement; therefore, this claim is preempted by § 301 and should be dismissed, because it is barred by the six-month statute of limitations applicable to actions under § 301. *DelCostello v. International Bhd. Of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).

■ Defendant also contends that § 301 preempts plaintiff's state law claim for intentional infliction of emotional distress. According to this argument, plaintiff's failure to pursue this claim through grievance procedures is grounds for dismissal for failure to exhaust available remedies. In the alternative, this claim should be dismissed, even if it was grieved, because plaintiff does not allege that he was unfairly represented by his union.

■ A state tort is not preempted if it is " 'either unrelated to the employment discrimination or a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself.' " *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 802 (6th Cir.1990) (*quoting Farmer v. United Bhd. of Carpenters*, 430 U.S. 290, 305, 97 S.Ct. 1056, 1066, 51 L.Ed.2d 338 (1977)). That is the case here; plaintiff's complaint alleges discriminatory supervision and an assault on plaintiff by one of his supervisors, abuse "entirely divorced from conduct authorized or even contemplated by the collective bargaining agreement." *Id.* Accordingly, plaintiff's second claim is not preempted by § 301.

■ As to the merits of plaintiff's claim, Ohio recognizes a cause of action against one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another. In *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 375, 453

N.E.2d 666 (1983), the Ohio Supreme Court defined "extreme and outrageous conduct" as conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." That Court also stated in *Russ v. TRW, Inc.*, 59 Ohio St.3d 42, 48, 570 N.E.2d 1076 (1991), that "an action for infliction of emotional distress is cognizable irrespective of the particular mental state of the tortfeasor," and "behavior of an intentional, reckless or negligent character resulting in such injury is actionable."

I cannot conclude as a matter of law that defendant's conduct was not outrageous enough not to constitute intentional infliction of emotional distress. Plaintiff experienced severe reactions to his perceived harassment and increased workload, including: sleeplessness, irritability, daily nausea, and embarrassment at twice losing his job. Plaintiff's treating psychologist even submitted a conclusory affidavit stating that defendant's conduct was "extreme, outrageous ... beyond all possible bounds of decency ... atrocious ... and utterly intolerable in a civilized community." (Aff. of Dr. DiFranco, Pltf's. Ex. D, ¶ 6).

There are also contradictory accounts of an argument between plaintiff and his supervisor, Jefferson, which, according to plaintiff, involved Jefferson losing control over a petty misunderstanding and physically assaulting plaintiff. After the assault, plaintiff drove the truck to the next stop to call the office. While plaintiff was on the phone, Jefferson took the truck, stranding plaintiff while he was in need of medical attention for his elbow. This incident, in conjunction with other allegations of harassment, necessitates finding that defendant is not entitled to summary judgment on the claim for intentional infliction of emotional distress.

■ As to plaintiff's state law handicap discrimination claim, O.R.C. § 4112.02 requires plaintiff to show that:

(1) plaintiff was handicapped,

(2) defendant took the challenged action because of plaintiff's handicap, and

(3) plaintiff can perform safely and substantially the essential job functions despite his handicap.

Defendant argues that this claim also is preempted under § 301, because the third element implicates the collective bargaining agreement. Therefore, plaintiff's failure to raise handicap discrimination at his November 1992, hearing would make plaintiff's claim time-barred or dismissable for failure to exhaust available remedies; additionally, there is no evidence that plaintiff was unfairly represented with regard to this claim.

As its only support, defendant cites *Hatlestad v. Consolidated Rail Corp.*, 75 Ohio App.3d 184, 598 N.E.2d 1302 (1991), for the proposition that reference to the collective bargaining agreement is necessary to ascertain relevant performance standards and working conditions. *Hatlestad*, however, does not describe the law of the Sixth Circuit as to the issue of § 301 preemption of state-law handicap discrimination claims.

According to the court in *Tisdale v. Local 704*, 25 F.3d 1308, 1310–11 (6th Cir.1994):

Section 301 does not preempt every suit involving unionized employees or their unions or divest state courts of their normal jurisdiction.... Federal law has monopolized certain aspects of labor relations, but where a suit does not center on the terms of a labor contract ... it is not preempted because it is not within the arena of labor relations which Congress has nationalized.

Applying the preemption analysis to a state-law handicap discrimination claim, the court found, in *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1333 (6th Cir.1989), that § 301 did not preempt plaintiff's cause of action because it was based solely on Michigan's Handicappers' Civil Rights Act (HCRA) and did not require interpretation of any term of the collective bargaining agreement. Since *Smolarek*, the Sixth Circuit has refused to preempt state law handicap claims. *See Welch v. General Motors Corp., Buick Motor Div.*, 922 F.2d 287 (6th Cir.1990); *O'Shea v. Detroit News*, 887 F.2d 683, 687 (6th Cir. 1989) (employees have the right not to be discriminated against on the basis of handicap without regard to collective bargaining

agreement's language about an employee's rights).

Other courts, furthermore, have reached the same result in dealing with state law handicap discrimination claims. *See Martin Marietta v. Maryland Com'n on Human Rel.,* 38 F.3d 1392 (4th Cir.1994); *Miller v. AT & T Network Sys.,* 850 F.2d 543 (9th Cir.1988) (question of whether employee can perform his job did not depend on interpretation of collective bargaining agreement); *Kube v. New Penn Motor Express,* 865 F.Supp. 221 (D.N.J.1994) (reference to collective bargaining agreement not necessary to determine whether plaintiff was meeting employer's expectations); *Brown v. Holiday Stationstores, Inc.,* 723 F.Supp. 396 (D.Minn. 1989); *Barron v. Safeway Stores, Inc.,* 704 F.Supp. 1555 (E.D.Wash.1988) (no preemption unless it was absolutely clear that it was necessary to interpret the collective bargaining agreement).

In the present matter, the collective bargaining agreement does not establish safety requirements or "essential job functions" applicable to plaintiff's position; therefore, a determination of liability could be made without interpreting the collective bargaining agreement. Because the third element might not implicate the collective bargaining agreement, § 301 does not preempt this state law claim.

■ Although plaintiff's ADA claim cannot be preempted in the same manner as plaintiff's state law claims, defendant contends that plaintiff should have pursued his ADA claim through the grievance procedure under his collective bargaining agreement. This argument is premised on the Supreme Court's statement in *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26 (1991) that statutory claims may be the subject of an arbitration agreement, and that "having made the bargain to arbitrate, the parties should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue."

*Gilmer* and the other cases on which defendant relies, however, are distinguishable. In *Gilmer,* the Supreme Court distinguished the plaintiff's contract, a New York Stock Exchange Registration Application, from collective bargaining agreements in which parties had not specifically agreed to arbitrate their statutory claims. It was significant to the Court that the circumstances of *Gilmer* did not involve any tension between collective representation and individual statutory rights. *Id.* at 35–36, 111 S.Ct. at 1657.

In *Austin v. Owens–Brockway Glass Container,* 844 F.Supp. 1103 (W.D.Va.1994), and *Lagrone v. Tomasso,* 1992 U.S.Dist. LEXIS 21958 (D.Conn.), the courts failed to discuss this distinction based on the type of agreements. Additionally, the court's decision in *Lagrone* has been superseded by *Claps v. Moliterno Stone Sales, Inc.,* 819 F.Supp. 141, 147 (D.Conn.1993), in which the court concluded that a collective bargaining agreement cannot, as a general matter, require an employee to arbitrate individual statutory claims. The court in *Austin,* furthermore, ignored the ADA's legislative history which strongly suggests that ADA claims may not be arbitrated in the absence of an express, voluntary waiver of the right to assert the claim in the courts. The Conference Committee Report on the ADA states:

> It is the intent of the conferees that the use of alternative dispute resolution procedures is completely voluntary. Under no condition would an arbitration clause in a collective bargaining agreement or employment contract prevent an individual from pursuing their rights under the ADA.

*Report of Conference Committee on Americans With Disabilities Act: Joint Explanatory Statements,* H.Conf.Rep. No. 596, 101st Cong., 2d Sess., U.S.Code Cong. & Admin.News 1990, at pp. 267, 598 (1990), reprinted in 136 Cong.Rec. H4582, 4606 (daily ed. July 12, 1990).

I find, instead, the decision in *Block v. Art Iron, Inc.,* 866 F.Supp. 380 (N.D.Ind.1994), to be persuasive. Recognizing the distinctive nature of collective bargaining agreements, the court in *Block* found that ADA claims may not be waived by the collective bargaining agreement's general arbitration clause. *Id.* at 387. Accordingly, I conclude that plaintiff's ADA claim is not barred by his

failure to seek arbitration prior to pursuing his claim in federal court.

 Defendant also argues, in the alternative, that plaintiff is not disabled within the meaning of the ADA and O.R.C. § 4112. There is a genuine issue of material fact, however, regarding the existence of plaintiff's disability. Plaintiff submits affidavits from his orthopedic surgeon and rehabilitation consultant stating that plaintiff, because he cannot perform a significant life activity, meets the requirements of the ADA.

This evidence conflicts with plaintiff's return to work without restriction after his knee surgeries and the physical exam which he took to become an employee with Union Pacific after leaving UPS. In that physical, plaintiff lifted 110 pounds from the floor, and the examining physician opined that plaintiff has "great knees." Due to the conflicting medical testimony, summary judgment should not be granted on this aspect of plaintiff's handicap claims.

As to another element of a handicap discrimination claim, whether plaintiff was discharged, plaintiff argues that he was constructively discharged by defendant. I conclude that a genuine issue of material fact exists as to whether defendant's supervisors were harassing plaintiff and increasing his workload due to his handicap to such a degree as to constitute constructive discharge. Similarly, an issue of fact remains regarding whether the modified lifting technique plaintiff used instead of a full squat constituted such a threat of injury to plaintiff's back that defendant did not need to make reasonable accommodation for his alleged disability.

Defendant alleges that it would not have hired plaintiff if it had known that he had been discharged by his prior employer for excessive demerits, a fact allegedly hidden by plaintiff when he applied for work with defendant. According to this argument, plaintiff is barred from any recovery on his claims because he would not have been hired, or he would have been discharged upon defendant's discovery of this information.

In *McKennon v. Nashville Banner Pub. Co.,* —— U.S. ——, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), the Supreme Court, however, held that after-acquired evidence does not bar recovery in suits under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.* Because plaintiff's handicap discrimination claims seek similar remedial relief, they are not barred by the after-acquired evidence doctrine.

For the reasons stated above,

**IT IS ORDERED THAT** defendant's motion for summary judgment be, and the same hereby is, granted as to plaintiff's first claim, and it is

**FURTHER ORDERED THAT** defendant's motion for summary judgment be, and the same hereby is, denied as to plaintiff's other claims.

**So ordered.**