JAMES JETT *v.* LESTER F. DUNLAP ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued October 3—decision released November 13, 1979

*John J. Buckley,* for the appellant (plaintiff).

*Edward J. Holahan, Jr.,* with whom, on the brief, was *Bruce M. Killion,* for the appellee (defendant Farrel Corporation).

LOISELLE, J. The plaintiff instituted this action against his work supervisor, Lester F. Dunlap, and

their employer, Farrel Corporation, to recover damages in common-law tort for an alleged battery which occurred at the workplace.

The plaintiff alleged that Dunlap accused him in a profane and insulting manner of being away from his machine. When he responded to Dunlap in a similar manner, Dunlap struck him, pushing him backwards and knocking off his hat. The plaintiff sued Dunlap and the Farrel Corporation, under a theory of respondeat superior, for the ensuing depression, disruption of his home life and humiliation among his fellow employees who harassed him for his failure to strike back.

The defendant Farrel Corporation demurred on the ground that General Statutes § 31-284 (a), a provision of the Workmen's Compensation Act, abolished the common-law cause of action asserted by the plaintiff. The Superior Court sustained the demurrer and rendered judgment for the defendant Farrel Corporation only. The plaintiff appealed.

The plaintiff assigns as error the trial court's determination that the plaintiff's remedies against the defendant corporation are limited to those provided by the Workmen's Compensation Act. The applicable portions of § 31-284 (a) provide: "An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment . . . but an employer shall secure compensation for his employees as follows . . . . All rights and claims between employer and employees . . . arising out of personal injury . . . sustained in the course of employment as aforesaid are abol-

ished . . . ."[1] The purpose of the workmen's compensation statute is to compensate the worker for injuries arising out of and in the course of employment, without regard to fault, by imposing a form of strict liability on the employer. *Klapproth* v. *Turner,* 156 Conn. 276, 279, 240 A.2d 886 (1968).

In previous decisions under the Workmen's Compensation Act we have consistently held that where a worker's personal injury is covered by the act, statutory compensation is the sole remedy and recovery in common-law tort against the employer is barred. *Mancini* v. *Bureau of Public Works,* 167 Conn. 189, 193, 355 A.2d 32 (1974) ; *Crisanti* v. *Cremo Brewing Co.,* 136 Conn. 529, 531, 72 A.2d 655 (1950) ; *Hoard* v. *Sears Roebuck & Co.,* 122 Conn. 185, 188, 188 A. 269 (1936) ; see also *Grogan* v. *New Britain,* 175 Conn. 174, 181, 397 A.2d 97 (1978). This well-established principle is not eroded when the plaintiff alleges an intentional tort by his supervisor.

The plaintiff contends that since the defendant Dunlap was trying to further the business of his master, Farrel Corporation, at the time he com-

---

[1] "[General Statutes] Sec. 31-284. BASIC RIGHTS AND LIABILITIES. (a) An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as follows, except that compensation shall not be paid when the personal injury has been caused by the wilful and serious misconduct of the injured employee or by his intoxication. All rights and claims between employer and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment as aforesaid are abolished other than rights and claims given by this chapter, provided nothing herein shall prohibit any employee from securing, by agreement with his employer, additional benefits from his employer for such injury or from enforcing such agreement for additional benefits. . . ."

mitted the battery, the defendant corporation is subject to common-law tort liability for Dunlap's acts. An intentional tort committed upon one employee by another, which causes personal injury arising out of and in the course of his employment, is covered by the compensatory provisions of the Workmen's Compensation Act. *Willis* v. *Taylor & Fenn Co.*, 137 Conn. 626, 627–28, 79 A.2d 821 (1951); 82 Am. Jur. 2d, Workmen's Compensation § 330. Unless the defendant employer intentionally directed or authorized Dunlap to strike the plaintiff, the employer has a right to view the incident as an injury arising out of and in the course of employment, another "industrial mishap in the factory, of the sort he has a right to consider exclusively covered by the compensation system." 2A Larson, Workmen's Compensation (1976) § 68.21, p. 13–11.

There is a distinction between an assault directly committed or authorized by the employer and an assault committed by a supervisory employee. Moreover, there are strong arguments against entertaining a common-law tort action against an employer for a supervisory employee's intentional assault. The first is that to allow such suits would mean that "in all assault cases by one co-employee on another, of which there are hundreds, [the] claimant would have only to show that the assailant was one notch higher on the totem-pole than the victim, and the compensation act would go out the window. So, in a large factory, with layer upon layer of foremen, supervisors, managers, executives and officers, the exclusiveness of compensation would no longer depend on whether the assault was merely another work-connected quarrel, but would turn on the relative rank of the participants—a consideration which has no bearing on work-connection at all." 2A Lar-

son, op. cit. § 68.21, p. 13–13. Furthermore, the righteous indignation one feels when one employee deliberately injures another is inadequate justification for awarding a common-law tort remedy against an innocent employer.

The correct distinction to be drawn in this case is between a supervisory employee and a person who can be characterized as the alter ego of the corporation. If the assailant is of such rank in the corporation that he may be deemed the alter ego of the corporation under the standards governing disregard of the corporate entity, then attribution of corporate responsibility for the actor's conduct is appropriate. It is inappropriate where the actor is merely a foreman or supervisor. 2A Larson, op. cit. §§ 68.21–68.22. Courts in other jurisdictions have adopted this distinction. *Heskett* v. *Fisher Laundry & Cleaners Co., Inc.,* 217 Ark. 350, 355–56, 230 S.W.2d 28 (1950); *Boek* v. *Wong Hing,* 180 Minn. 470, 471–72, 231 N.W. 233 (1930); *Thompson* v. *Jones Construction Co.,* 199 S.C. 304, 310, 19 S.E.2d 226 (1942); *Garcia* v. *Gusmack Restaurant Corporation,* 150 N.Y.S.2d 232, 234 (City Ct. N.Y., 1954). The distinction is based on identification, not agency. If the assailant can be identified as the alter ego of the corporation, or the corporation has directed or authorized the assault, then the corporation may be liable in common-law tort; if the assailant is only another employee who cannot be so identified, then the strict liability remedies provided by the Workmen's Compensation Act are exclusive and cannot be supplemented with common-law damages.

The pleadings do not allege that the employer directed or authorized the assault or that the assailant was of such a status in the defendant's organiza-

tion as to be characterized as the alter ego of the corporation. The plaintiff, however, did plead that the acts of the supervisor were subsequently "condoned" by the employer. Although we assume this pleading to be true, such condoning is not an intentional tort on the part of the employer and does not relate back to make it such. In *Bakker* v. *Baza'r, Inc.*, 275 Or. 245, 253–54, 551 P.2d 1269 (1976), it was held that Oregon's statutory exception to the Workmen's Compensation Act, which permits a worker to sue the employer in common-law tort for an intentional injury, did not encompass an employer's ratification of another employee's intentional tort because the plaintiff's injury, if any, did not result from the subsequent ratification but from the tortious act. Therefore, when we consider the case as pleaded, the trial court's judgment for the employer upon the demurrer was proper.

The plaintiff next claims that if his remedies under the Workmen's Compensation Act are exclusive, then the act violates the federal constitutional guarantee of equal protection under the fifth and fourteenth amendments because, under § 31-284 (a), the "wilful and serious misconduct of the injured employee" deprives him of his right to compensation, but the wilful and serious misconduct of the employer does not subject it to a penalty. This claim is inappropriate. There is no allegation that the plaintiff was denied statutory compensation as a result of wilful and serious misconduct, nor did the employer engage in wilful or serious misconduct by directing or authorizing Dunlap to strike the plaintiff. Where a fellow employee engages in wilful or serious misconduct resulting in personal injury or death to a plaintiff, which arises out of and in the course of a plaintiff's employment, then a plaintiff's remedy

lies within the Workmen's Compensation Act. *Willis v. Taylor & Fenn Co.,* 137 Conn. 626, 79 A.2d 821 (1951). Where such wilful or serious misconduct is engaged in by an employer, as identified by the standard we set forth today, then a plaintiff may pursue common-law remedies.

Finally, the plaintiff, citing *Farrell* v. *L.G. DeFelice & Son, Inc.,* 132 Conn. 81, 90, 42 A.2d 697 (1945), contends that since the workmen's compensation statute does not afford "an adequate remedy" to the plaintiff, the common-law action is not replaced. This assertion misconstrues the holding of *Farrell.* In *Farrell,* the plaintiff's intestate was employed by the state highway department to inspect the construction of highways by private contractors. The plaintiff sued the defendant construction company for negligence which allegedly caused the death and the jury awarded damages. The defendant appealed, claiming, inter alia, that the plaintiff's right to recover at common law had been replaced by the Workmen's Compensation Act, and that the plaintiff had no common-law cause of action against the defendant construction company. The court rejected this claim, holding that the plaintiff's common-law remedies against the defendant contractor were not barred by the act because the statute did not abolish such remedies against third parties without immunity under the compensation system. There was no employer-employee relationship between the plaintiff's intestate and the defendant. The court's statement (p. 90): "In short, we have interpreted our act as meaning that the right to recover at common law for injuries is replaced by provisions of the compensation act just as far as the latter afford a remedy" was not intended to restore common-law tort liability where

the compensation act provides a lesser return than the plaintiff believes a jury would have awarded against his employer.[2]

Since the enactment of the first state workmen's compensation act in New York in 1910, the clear trend in the development of compensation law in the United States has been to limit common-law tort actions for injuries arising out of and in the course of employment and to satisfy as many claims as possible under the compensation act. Prosser, Torts (4th Ed., 1971) § 80. The decisions of this court are consistent with this trend. *McNamara* v. *Hamden,* 176 Conn. 547, 398 A.2d 1161 (1979); *English* v. *Manchester,* 175 Conn. 392, 397–98, 399 A.2d 1266 (1978).

There is no error.

In this opinion the other judges concurred.

---

[2] Professor Larson has observed: "Almost every major error that can be observed in the development of compensation law, whether judicial or legislative, can be traced . . . to the importation of tort ideas . . . . Among common-law trained lawyers and judges . . . the tort connection fallacy has been most prevalent. . . . Failure to make a clean break with tort thinking can be harmful to the employer as well as to the employee. For example, the cases which hold that the employer may be personally liable in tort for assaults deliberately committed by his supervisory employees, as against the employer's defense of exclusive compensation coverage, are wrong because they import into the compensation system a concept of employer liability for vice-principal which was developed in the late nineteenth century solely to get around the fellow-servant defense to tort actions against the employer." Larson, "The Nature and Origins of Workmen's Compensation," 37 Cornell L.Q. 206, 207–208 (1952). Professor Riesenfeld has also discussed the fundamental and intrinsic differences between workmen's compensation and tort liability and the frequency with which courts and textwriters have overlooked those distinctions. Riesenfeld, "Forty Years of American Workmen's Compensation," 35 Minn. L. Rev. 525, 529–32 (1951).