Mark S. BURKE

v.

INTERLAKE, INC., A.J. Bayer, Co., and Hallmark Cards, Inc.

Civ. No. H 83–520.

United States District Court, D. Connecticut.

Nov. 28, 1984.

William R. Moller, Robert M. Shields, Jr., Moller, Horton & Fineberg, P.C., Hartford, Conn., for plaintiff.

John T. Scully, Cooney, Scully & Dowling, Hartford, Conn., for defendant Hallmark Cards, Inc.

## RULING ON MOTION TO DISMISS

JOSÉ A. CABRANES, District Judge:

This action is before the court on a Motion to Dismiss, filed on July 23, 1984, on behalf of defendant Hallmark Cards, Inc. ("Hallmark", "the defendant", or "the employer").[1] Hallmark seeks dismissal of Count Five of the plaintiff's Second Amended Complaint (filed June 13, 1984) ("the Complaint"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In ruling on this motion, the court has considered the memoranda submitted by the parties, as well as the arguments presented by counsel at a hearing held on October 29, 1984.

The plaintiff in this action is a Connecticut resident and a former employee of the defendant, a Missouri corporation. The Complaint states, *inter alia*, that the plaintiff sustained severe injuries while loading pallets onto a conveyor system at the defendant's distribution facility in Enfield, Connecticut. The plaintiff alleges in Count Five of the Complaint that his injuries were the proximate result of the wilful, wanton, and intentional acts of the defendant in failing to warn him of possible dangers in operating the conveyor system, failing to instruct him in the proper use of the conveyor system, failing to install adequate safety equipment, and failing to comply with state and federal laws governing the safety of the workplace. *See* Complaint at 12–15. In support of its motion, the defendant contends that the action against it cannot be maintained because the plaintiff's exclusive remedy against his former employer is provided by the Connecticut Workers' Compensation Act ("the Act"), Conn.Gen.Stat. §§ 31–275 to 31–355.[2]

For the purposes of a motion to dismiss for failure to state a claim upon which relief can be granted, the well-pleaded material allegations of the complaint must be taken as admitted. *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 174–175, 86 S.Ct. 347, 348–49, 15 L.Ed.2d 247 (1965); *George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 553 (2d Cir.1977). The court must construe the complaint liberally in the plaintiff's favor, *see Scheuer v. Rhodes*, 416 U.S. 232, 236–237, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974), and may grant a motion to dismiss only if it is beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *McLain v. Real Estate Board of New Orleans, Inc.*, 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980).

Since no federal question is presented, and the court's jurisdiction over the present action is premised solely on the diversity of citizenship of the parties, *see* Complaint at 1–2; 28 U.S.C. § 1332, the court is bound to apply the substantive law of the forum state. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The parties appear to be in agree-

---

**1.** Other defendants in this action are Interlake, Inc. and A.J. Bayer, Co., which are alleged to have designed, manufactured, sold and installed the conveyor system. *See* Complaint at 1–2.

**2.** Counsel for the plaintiff admitted at oral argument that the plaintiff has already received benefits under the Workers' Compensation Act due to the injuries that form the basis of this action. Hallmark contends that the plaintiff may not receive a "double recovery" and that this fact alone precludes the plaintiff's action against it. *See* Defendant's Memorandum at 10–12. It is unclear whether the Connecticut Supreme Court intended in *Jett v. Dunlap*, 179 Conn. 215, 425 A.2d 1263 (1979), to create a remedy that is an alternative to, or supplemental to, the statutory remedy provided under the Connecticut Workers' Compensation Act, Conn.Gen.Stat. §§ 31–275 to 31–355. *See Jett v. Dunlap, supra*, 179 Conn. at 219; *Hatcher v. Bullard Co.*, 39 Conn. Sup. 250, 257 n. 2, 477 A.2d 1035 (1984) (Berdon, J.). This unsettled question under Connecticut law need not be addressed in this ruling.

ment that the law of Connecticut governs the substantive rights of the parties in this action. *See* Defendant's Memorandum of Law in Support of the Motion to Dismiss (filed July 23, 1984) ("Defendant's Memorandum") at 4; Plaintiff's Memorandum in Opposition to the Motion to Dismiss of the Defendant Hallmark (filed Sept. 24, 1984) ("Plaintiff's Memorandum") at 9–10.

Under Connecticut law, an employer is not liable in tort for damages due to personal injuries sustained by an employee "arising out of and in the course of his employment." Conn.Gen.Stat. § 31–284 (a).[3] Compensation for such injuries is provided pursuant to provisions of the Act, and the Connecticut Supreme Court repeatedly and consistently has ruled that, "when an employee's injury is covered by the Workers' Compensation Act, statutory compensation is the sole remedy and ... recovery in common-law tort against the employer is prohibited." *Sullivan v. State,* 189 Conn. 550, 558, 457 A.2d 304 (1983). *See Morin v. Lemieux,* 179 Conn. 501, 503, 427 A.2d 397 (1980); *Jett v. Dunlap,* 179 Conn. 215, 217, 425 A.2d 1263 (1979); *Horney v. Johnson,* 167 Conn. 621, 622–623, 356 A.2d 879 (1975).

In seeking to avoid the consequences of this well established rule, the plaintiff relies on *Jett v. Dunlap, supra,* in which the Connecticut Supreme Court held that an employee who sustained injuries as the result of an intentional battery committed by his supervisor could not recover damages in tort from his employer. The Court impliedly created a narrow exception to the rule that workers' compensation provides an exclusive remedy by suggesting in *dicta* that a common law action against the employer would not have been precluded by the Act if the employer had "intentionally

directed or authorized [the supervisor] to strike the plaintiff." *Jett v. Dunlap, supra,* 179 Conn. at 218, 425 A.2d 1263.

The exception impliedly carved out by the Connecticut Supreme Court in *Jett* is far too narrow to support the plaintiff's common law claim against Hallmark in this case. The tort at issue in *Jett* was a supervisor's intentional assault on an employee. *Id.* at 216, 425 A.2d 1263. The court held that workers' compensation was a bar to the employee's suit against his employer because the employee did not allege that the employer authorized the assault or that the supervisor was the alter ego of the employer. *Id.* at 219, 425 A.2d 1263. At most, the Complaint in this case alleges that the employer intentionally failed to take action that would have prevented the plaintiff's injuries. Unlike the situation anticipated by the exception carved out in *Jett,* the plaintiff here does not allege that the employer was motivated by a desire to harm him.

The Connecticut Supreme Court made clear in *Jett* that it will allow plaintiffs to circumvent the workers' compensation system only where an employer acts with an intent to injure an employee. The Court stated that "[w]here such willful or serious misconduct is engaged in by an employer, as identified by the standard we set forth today, then a plaintiff may pursue common-law remedies." *Id.* at 221, 425 A.2d 1263. To permit the maintenance of a suit where no such intent to injure is alleged would be contrary to the approval in *Jett* of the "clear trend" of cases in the United States "to limit common-law tort actions for injuries arising out of and in the course of employment and to satisfy as many claims as possible under the compensation act." *Id.* at 222, 425 A.2d 1263.[4]

---

**3.** Section 31–284(a) provides, in relevant part,

> [a]n employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained .... All rights and claims between employer and employees, or any representatives or dependents of such

employees, arising out of personal injury or death sustained in the course of employment as aforesaid are abolished other than rights and claims given by this chapter ....

**4.** The Court elaborated on this point by noting that "[a]lmost every major error that can be observed in the development of compensation law, whether judicial or legislative, can be traced ... to the importation of tort ideas ...."

This interpretation of the state of the law in Connecticut following *Jett* is consistent with the only published opinion construing that case. *See Hatcher v. Bullard Co.*, 39 Conn.Sup. 250, 254–255, 477 A.2d 1035 (1984) (Berdon, J.). In rejecting a claim identical to that raised by the plaintiff in the present case, the Superior Court held in *Hatcher* that an employer's intentional, wilful, or wanton violation of safety regulations does not remove the bar created by the Act to common law tort actions. *Id. See Carman v. Campbell*, No. 264110 (Conn. Superior Court, Hartford County, July 26, 1984) (adopting holding of *Hatcher v. Bullard, supra*). Judge Berdon ruled that the exception suggested by *Jett* applies only to conduct calculated to harm an employee, *id.* at 255, 477 A.2d 1035, and that an employer's intentional failure to comply with safety regulations does not divest a resulting injury of its accidental nature or constitute conduct calculated to cause harm. *Id.* at 252–254, 477 A.2d 1035.[5]

Both parties have directed the court's attention to unpublished opinions of the Connecticut Superior Court that hold that an actual intent to injure is not necessary to remove conduct from the reach of the workers' compensation system. *See, e.g., Wisnor v. Radnor Manufacturing*, No. 266470 (Conn. Superior Court, Hartford County, Nov. 16, 1982); *Stephens v. Emson Research, Inc., et al.*, No. 207873

(Conn. Superior Court, Fairfield County, July 22, 1983). These decisions rest on a mistaken interpretation of *Jett v. Dunlap, supra*, and are not persuasive.[6]

In ruling on a question of state law, a federal district court whose jurisdiction rests on diversity of citizenship must attempt to ascertain how the state's highest court would rule in a similar matter. *See King v. Order of United Commercial Travelers of America*, 333 U.S. 153, 160–161, 68 S.Ct. 488, 492, 92 L.Ed. 608 (1948). In this case, the court must be guided by the Connecticut Supreme Court's limited holding in *Jett v. Dunlap, supra*, and its repeated affirmations of the exclusivity of the remedies provided by the Act. *See, e.g., Sullivan v. State, supra*, 189 Conn. at 558, 457 A.2d 304; *Morin v. Lemieux, supra*, 179 Conn. at 503, 427 A.2d 397; *Jett v. Dunlap, supra*, 179 Conn. at 217, 222, 425 A.2d 1263. This court concludes that if the Connecticut Supreme Court were faced with a case such as this one, it would adopt the reasoning and holding of *Hatcher v. Bullard, supra*, and it would rule that § 31–284(a) of the Connecticut General Statutes precludes the plaintiff's common law action against Hallmark.

\*       \*       \*

The remaining argument raised in the Plaintiff's Memorandum, to the effect that liability may be imposed on Hallmark under § 31–49 of the Connecticut General Stat-

---

*Jett v. Dunlap, supra*, 179 Conn. at 222 n. 2, 425 A.2d 1263 (quoting Larson, *The Nature and Origins of Workmen's Compensation*, 37 Cornell L.Q. 206, 207–208 [1952]).

5. This position is consistent with that urged by Professor Larson in his treatise on workers' compensation law.

 Since the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, the common-law liability of the employer cannot, under the almost unanimous rule [of jurisdictions in the United States], be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of

genuine intentional injury .... Even if the alleged conduct ... includes such elements as ... wilfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of accidental character.

2A Larson, *Workmen's Compensation Law* § 68.13, at 13–8 to 13–26 (1982).

6. It may be argued that the rule adopted in these cases is a better rule, since the prospect of common law liability may encourage employers to provide safe workplaces and to comply with mandatory safety regulations. Notwithstanding the possible merit to this argument as a matter of policy, it is not the function of this court to create exceptions to validly promulgated enactments of the state legislature.

utes, is totally without merit.[7] There is no authority for the proposition that § 31–49 is a basis for common law liability supplementing remedies provided under the Act.

### Conclusion

For the reasons stated above, Hallmark's Motion to Dismiss (filed July 23, 1984) is granted. Count Five of the Complaint is hereby dismissed.

It is so ordered.

---

**7.** Section 31–49, which was last revised in 1949, states in full that

[i]t shall be the duty of the master to exercise reasonable care to provide for his servant a reasonably safe place in which to work, reasonably safe appliances and instrumentalities for his work and fit and competent persons as his co-laborers and to exercise reasonable care in the appointment or designation of a vice-principal and to appoint as such vice-principal a fit and competent person. The default of a vice-principal in the performance of any duty imposed by law on the master shall be the default of the master.