[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION FOR SUMMARY JUDGMENT
The plaintiff, Robert Buckman, brings this action against the defendants, J.P. Carroll Construction Company (JPC) and James P. Carroll, president, his employers at all times relevant to what is now the second amended complaint. The complaint arises out of injuries allegedly sustained by Buckman on January 6, 1996, when he fell approximately twenty feet from a snow covered roof while working as a roofer for JPC in Burlington, Connecticut. The complaint alleges that the defendants required Buckman to work on a snow covered roof which rose at least twenty feet off the ground without scaffolding, harnesses or other safety devices in violation of Occupational Safety and Health Administration (OSHA) regulations or industry standards. Moreover, the complaint alleges that the defendants required Buckman to work in weather conditions that were inherently dangerous. On March 23, 1998, CT Page 4136 Buckman executed a stipulation for full and final settlement of a worker's compensation claim filed in connection with the foregoing accident as to JPC and Maryland Insurance Group/Zurich Commercial Insurance Company which was approved by the Sixth District Compensation Commissioner.
Buckman brings the present action under the exception to the exclusivity clause of the Workers' Compensation Act. Pursuant to this exception, counts one and two allege that JPC and Carroll's actions, respectively, were intentional and that JPC and Carroll knew that the plaintiffs injuries were substantially certain to occur as a result of their actions.
On October 19, 1999, the defendants filed a motion for summary judgment on the ground that no genuine issue of material fact exists regarding whether the defendants intentionally caused Buckman' s alleged injuries or that the defendants knew with substantial certainty that injuries would occur to him as required under Suarez v. Dickmont Plastics Corp., 242 Conn. 255,698 A.2d 838 (1997). Alternatively, the defendants move for summary judgment on the ground that Buckman's action is barred because the stipulation filed in the worker's compensation commission constituted a prior settlement, release, adjustment, and/or accord and satisfaction of all claims against them.
The standards that the court must apply in deciding a motion for summary judgment are well established. "Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Millerv. United Technologies Corp., 233 Conn. 732, 744-45, 660 A.2d 810
(1995). "A genuine issue has been variously described as a triable, substantial or real issue of fact . . . and has been defined as one which can be maintained by substantial evidence." (Citation omitted; internal quotation marks omitted.) United OilCo. v. Urban Redevelopment Commission, 158 Conn. 364, 378,260 A.2d 596 (1969). "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) Hammer v.Lumberman's Mutual Casualty Co., 214 Conn. 573, 578, 573 A.2d 699
(1990). "Issue of fact encompasses not only evidentiary facts in issue but also questions as to how the trier would characterize such evidentiary facts and what inferences and conclusions it CT Page 4137 would draw from them." (Internal quotation marks omitted.) UnitedOil Co. v. Urban Redevelopment Commission, supra, 379.
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Rivera v.Double A Transportation, Inc., 248 Conn. 21, 24, 727 A.2d 204
(1999). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski,206 Conn. 495, 500, 538 A.2d 1031 (1988).
 I
The first issue before the court is whether there are any genuine issues of material fact regarding whether the defendants intentionally caused Buckman's injuries or that the defendants knew such injuries were substantially certain to occur as a result of their acts. In Jett v. Dunlap., 179 Conn. 215.425 A.2d 1263 (1979), the Connecticut Supreme Court first carved out an exception to the exclusive remedy provision of General Statutes § 31-284(a)[1] of the Workers' Compensation Act for intentional tortuous conduct by an employer. In Suarez v.Dickmont Plastics Conn., supra, 242 Conn. 255, the court explained that "[s]ince the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, the common-law liability of the employer cannot . . . be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting an injury. . . . . . . . . What is being tested is not the degree of gravity of the employer's conduct, but, rather, the narrow issue of intentional versus accidental conduct." (Citation omitted; internal quotation marks omitted.) Suarez v. Dickmont Plastics Corp., supra, 279. The court articulated that "intent refers to the consequences of an act . . . [and] denote[s] that the actor CT Page 4138desires to cause [the] consequences of his act, or that hebelieves that the consequences are substantially certain to follow from it. . . . A result is intended if the act is done forthe purpose of accomplishing such a result or with knowledge that to a substantial certainty such a result will ensue." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id.
"Therefore, to escape the exclusivity of the act, the victim of an intentional injury must rely on the intended tort theory or the substantial certainty theory. Under the former, the actor must have intended both the act itself and the injurious consequences of the act. Under the latter, the actor must have intended the act and have known that the injury was substantially certain to occur from the act." Suarez v. Dickmont PlasticsCorp., supra, 242 Conn. 280. The court reasoned that "[t]he problem with the intentional tort test, i.e., whether the employer intended the specific injury, appears to be that it allows employers to injure and even kill employees and suffer only workers' compensation damages so long as the employer did not specifically intend to hurt the worker. . . . Prohibiting a civil action in such a case would allow a corporation to cost-out an investment decision to kill workers. . . . The substantial certainty test provides for the intent to injure exception to be strictly construed and still allows for a plaintiff to maintain a cause of action against an employer where the evidence is sufficient to support an inference that the employer deliberately instructed an employee to injure himself." (Internal quotation marks omitted.) Id., 258.
The defendants assert that Buckman cannot establish an issue of fact regarding whether they intended to injure him. Specifically, the defendants assert that there is no evidence that Carroll had any idea that Buckman intended to move to the front portion of the roof, that there was ice on the toe board, or that Buckman would attempt to lean out over an unprotected portion of the roof and injure himself. The defendants rely on Suarez v. DickmontPlastics Conn., supra, 242 Conn. 255, and Mingachos v. CBS. Inc.,196 Conn. 91, 491 A.2d 368 (1985), for the proposition that a defendant's failure to comply with OSHA regulations or industry standards does not satisfy the intentional tort or substantial certainty standard.
The defendants submit the deposition of Robert Buckman in support of their motion for summary judgment. Buckman testified CT Page 4139 at his deposition that there was snow on the roof from a storm the previous night, that the 2 x 6 board was wet and filled with ice and that he slipped and fell from the board. (Defendants' Memorandum, Exhibit B Plaintiff's Memorandum, Exhibit B, Deposition of Robert Buckman, July 27, 1998 [Buckman Deposition], p. 22.) Buckman further testified that as he kneeled down on the 2 x 6 board to nail up a canvass on the side of the house, he hit a patch of ice, lost his balance and rolled off the roof. (Buckman Deposition, pp. 27, 34.) Buckman also testified that no specific person was responsible for moving the 2 x 6 board from one spot to another and that no one has to be told what to do on the job site. (Buckman Deposition, pp. 39, 42.)
The defendants also submit the deposition of James P. Carroll in which Carroll testified that on the morning of the accident he was at the job site to set up the staging and working conditions. (Defendants' Memorandum, Exhibit C Plaintiffs Memorandum, Exhibit C, Deposition of James Carroll, August 6, 1999 [Carroll Deposition], p. 13.) Carroll further testified that the back of the house was set up with staging and that it is company policy for slide/fall protection that employees stay within the area where the equipment is set up. (Carroll Deposition, pp. 14, 15.) Carroll also testified that harnesses were present at the job site for the use of employees and that he did not tell Buckman not to use a harness on the day of the accident. (Carroll Deposition, pp. 15, 16.) Moreover, Carroll testified that the sky was clear, the temperature was above 38 degrees and the roof was not slippery on the day of the accident. (Carroll Deposition, pp. 17, 18.)
Buckman opposes the motion for summary judgment on the ground that genuine issues of material fact exist. In support of his position, Buckman submits a letter from Art Horn, Meteorologist A.M.S., dated August 27, 1999, stating that total snow fall was about 18 inches and the weather in Burlington, Connecticut, on January 6, 1996, was sunny and very cold with a morning low temperature of five degrees below zero and an afternoon high of seventeen degrees. (Plaintiffs Exhibit E, August 27, 1999 Letter.) Horn also stated that the average temperature of six degrees on January 6, 1996, was the coldest of the month. (Plaintiffs Exhibit E, August 27, 1999 Letter.)
Buckman testified at his deposition that he was ordered to work on the front part of the roof by the foreman and that there was no scaffolding, staging or other protective devices in that area CT Page 4140 of the roof. (Buckman Deposition, pp. 24, 25, 38, 39.) Buckman further testified that there was no protective equipment at all on the job site and that Carroll would not allow him to use safety harnesses that were in his vehicle because it slows down production." (Buckman Deposition, pp. 25, 35.) Buckman also testified that the 2 x 6 board was put up on the roof the day before. (Buckman Deposition, p. 24.)
Buckman also relies on JPC's safety guidelines, entitled "Safety Procedures While On Job" that state "if an employee is exposed to falling 6 feet (1.8 meters) or more from an unprotected side or edge, the employer must select either a guardrail system, safety net system, or personal fall arrest system to protect the worker." (Plaintiffs Exhibit F, Safety Procedures While On Job, p. 1.) The guidelines also state that "[e]mployees must be trained in the following areas: . . . (d) the role of each employee in the safety monitoring system when the system is in use. . . ." (Plaintiffs Exhibit F, Safety Procedures While On Job, p. 5.) Buckman also submits the deposition of James P. Carroll in which he testified that he provides safety training to all employees. (Plaintiffs Exhibit C, Deposition of James P. Carroll, December 13, 1999, p. 16.) Carroll testified, however, that he did not know what the safety monitoring system referenced in the "Safety Procedures While On Job" meant. (Plaintiffs Exhibit C, Deposition of James P. Carroll, December 13, 1999, p. 24).
Viewing "the evidence in the light most favorable to the nonmoving party"; Rivera v. Double A Transportation, Inc., supra,248 Conn. 24; the court concludes that there are various genuine issues of material fact which preclude the granting of summary judgment. Among these issues are whether the defendants required Buckman to work on the roof without scaffolding or other safety devices and in weather conditions that were inherently dangerous. Although the defendants offered evidence in support of their position, Buckman has provided an evidentiary foundation including a letter from meteorologist Art Horn, the deposition of Carroll and his own deposition that refute the defendants' evidence. Thus, the defendants have not met their burden of showing the absence of any genuine issue of material fact which would entitle them to judgment as a matter of law. See Rivera v.Double A Transportation. Inc., supra, 24.
 II CT Page 4141
The remaining issue before the court is whether the defendants are entitled to summary judgment on the ground that Buckman's action is barred due to a previous settlement, release, adjustment, and/or accord and satisfaction of all claims against the defendants. Specifically, the defendants assert that Buckman's claim is barred by a stipulation for full and final settlement that Buckman executed with JPC and Maryland Insurance Group/Zurich Commercial Insurance Company on March 23, 1998. The relevant portion of the stipulation states: "[T]o be in full, final and complete settlement, adjustment, accord and satisfaction of all claims which the claimant might otherwise have against the respondents or any of them and to be made and accepted in lieu of all other compensation payments in accordance with the language of our Workers' Compensation Act. . . . The payment as aforesaid shall be made and accepted as a full and final settlement for all rights under the Workers' Compensation Act including specific for said injuries and for all results upon the claimant past, present and future to the end that the payment of such sum shall constitute a complete satisfaction for all claims due or to become due at any time in favor of anybody on account of the claimed injury or on account of any condition in any way resulting out of said injury. Said sum is to be accepted as a full and final settlement for all claims under the Workers' Compensation Act and for all results upon the claimant, his successors and/or representatives for all claims or potential claims, past, present, and future, including death." (Defendants' Exhibit D, Stipulation For Full and Final Settlement, March 16, 1998.)
The court finds the defendants' argument unpersuasive because the language of the stipulation states that it is for full and final settlement for all rights and claims under the Workers' Compensation Act. In the present case, Buckman is pursuing an an action against JPC under the exception to the exclusivity clause of the Workers' Compensation Act. Hence, Buckman's current claims do not fall within the ambit of the Workers' Compensation Act and, therefore, are not barred by the stipulation. Accordingly, the court denies the defendants' motion for summary judgment.
Peck, J.