[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON POST JUDGMENT MOTIONS
I. PROCEDURAL HISTORY
The plaintiff Michael Petrozzi commenced this action by writ, summons and complaint dated October 21, 1997. The plaintiff's complaint sued his employer, the defendant Ensign-Bickford Company, notwithstanding the exclusivity provisions of the Worker's Compensation Law. His allegations were grounded in the Connecticut Supreme Court decisions of Suarez v.Dickmont Plastics Corporation, 229 Conn. 99 (1994); Suarez v. DickmontPlastics Corporation, 242 Conn. 255 (1997). Following a jury trial on June 15, 2000 the jury rendered a verdict in favor of the plaintiff in the amount of $3,766,380.94.
On March 19, 1999, within eighteen months of the filing of the complaint the plaintiff had filed an offer of judgment in the amount of $1,100,000.00. The defendant did not accept this offer within thirty days and accordingly the offer was deemed rejected by the defendant.
The defendant Ensign-Bickford Company had paid the plaintiff $298,506.10 in workers compensation benefits. Prior to trial, the defendant Ensign-Bickford had been allowed to intervene as a plaintiff for the purpose of recovering back the compensation payments which it had made.
II. PENDING MOTIONS
The parties have made the following motions to the trial court:
1. Plaintiff's motion for award of offer of judgment interest and statutory attorney's fees.
2. Plaintiff's bill of taxable costs.
3. Plaintiff's motion for prejudgment remedy.
4. Defendant's motion to reduce the verdict by the amount paid in worker's compensation benefits.
5. Plaintiff's request for punitive damages.
6. Defendant's motion for a remittitur.
7. Defendant's motion to set aside the verdict or for judgment CT Page 9673 notwithstanding the verdict.
1. PLAINTIFF'S MOTION FOR AWARD OF OFFER OF JUDGMENT INTEREST
It is well settled that "prejudgment interest is to be awarded by the trial court when a valid offer of judgment is filed by the plaintiff, the offer is rejected by the defendant, and the plaintiff ultimately recovers an amount greater than the offer of judgment after trial." Lutynski v.B. B. J Trucking, Inc., 31 Conn. App. 806, 812 (1993), Aff'd229 Conn. 525 (1994). Connecticut courts have held that "an award of interest under Section 52-192a is mandatory and the application of Section 52-192a does not depend on an analysis of the underlying circumstances of the case or a determination of the facts." Id.
Clearly the plaintiff Michael Petrozzi is entitled to offer of judgment interest pursuant to Section 52-192a. The principal upon which that interest is to be calculated will be determined later in this memorandum.
2. PLAINTIFF'S BILL OF TAXABLE COSTS
Pursuant to General Statute Section 52-57 and 52-60. The plaintiff has submitted a bill of taxable costs. Those costs total $3,943.55 and appear to be uncontested by the defendant. Accordingly, costs in the amount of $3,943.55 are awarded.
3. PLAINTIFF'S MOTION FOR PREJUDGMENT REMEDY AND DISCLOSURE OF ASSETS
The plaintiff has moved for a prejudgment remedy and disclosure of assets to secure its judgment. The plaintiff is anticipating an appeal in the matter and argues that he is entitled to be secured for the payment of the judgment in the event he is successful on the appeal. The court can find no appellate authority in Connecticut on the question of the availability of a prejudgment remedy post-judgment. For that matter, there appears to be no appellate authority on the question whether a prejudgment remedy entered before judgment survives judgment.
A 1999 trial decision by Judge Frazzini in Winsted Land Development v.Design Coll. Arch, CV 96-0071571-S, 1999 Conn. Sup. 3851 (Judicial District at Litchfield, 1999) addresses the problem and discusses earlier trial court decisions by Judge Devita and Judge Blue. Essentially those trial court opinions determined that a final judgment for purposes of the prejudgment remedy statute is different from the definition of a final judgment for purposes of taking an appeal. Judge Fazzini wrote:
"The finality of a judgment may, however, depend CT Page 9674 upon the outcome of the pending appeal. If the trial court's judgment is sustained, or the appeal dismissed, the final judgment ordinarily is that of the trial court. If, however, there is a reversible error, the final judgment is that of the Appellate Court.
 Accordingly, the court overrules defendant's objection to the plaintiff's application for prejudgment remedy. By previous agreement of the parties, this matter should now be scheduled for a hearing on the application itself."
The parties have stipulated to an agreement which is intended to provide the plaintiff with the security he seeks.
4. MOTION TO REDUCE THE VERDICT BY THE AMOUNT PAID IN WORKER'S COMPENSATION BENEFITS
In Suarez our Supreme Court held:
 "We are not unmindful that our opinion today may trigger concerns among employers regarding their potential exposure to claims on two fronts. We do not believe that our holding, however, will encourage significant additional litigation, for only in those rare instances where an employer's conduct allegedly falls within the very narrow exception to the act, will such litigation result. In those very few instances, we believe that it is better to allow employees to accept the well conceived and often vital benefits of the act rather than to gamble on a potential recovery it is not likely to provide compensation until considerably later. We think the setoff provisions used routinely by our judges in other areas[10] provide adequate protection for employers on those rare occasions where a suit follows recovery under the act."
Footnote 10 in the above-quoted language refers to the collateral source rules of § 52-225a. Neither the right to setoff under §52-225a, nor the right to indemnity against a responsible third party under Section 31-293 (a) is clearly applicable in the instant case. Nevertheless, the court, in fashioning the Suarez remedy, appears to have anticipated setoffs for Worker's Compensation payments. Accordingly the court awards to Ensign-Bickford as a plaintiff $298,506.10 and further CT Page 9675 orders that future worker's compensation payments that may be awarded to Mr. Petrozzi may be offset against any recovery he may receive in the instant action. If the judgment entered in Mr. Petrozzi's favor is not overturned on appeal and if Mr. Petrozzi is awarded additional worker's compensation benefits at any time in the future with respect to the injuries related to the October 25, 1995 explosion, then such worker's comp benefits would be withheld as offsets against the civil judgment in this case until such time as they exceed the judgment.
5. PLAINTIFF'S REOUEST FOR PUNITIVE DAMAGES
In the instant matter punitive damages are allowable at common law in order to punish the tortfeasor in a manner that would deter others from committing like offenses. See Hanna v. Sweeney, 78 Conn. 492 (1906). Punitive damages are assessed "by way of example" and represent "a sort of hybrid between a display of righteous indignation and the imposition of a criminal fine." Id. at 493. The award of punitive damages rests in the discretion of the jury "as the degree of punishment to be thus inflicted must depend upon the particular circumstances of each case . . . [and] it depends upon the degree of malice, wantonness, or oppression, or outrage of the defendant's conduct. . . ." Day v. Woodworth, 13 How. 363, 14 L.Ed. 181. In the instant matter, the parties have agreed that the discretion to award punitive damages and the amount of punitive damages should be withdrawn from jury consideration and would be decided by the judge alone as a post-trial matter.
"As a general rule, punitive damages may be awarded only for outrageous conduct Ames v. Sears, 8 Conn. App. 642, 655 (1986). "Punitive damages . . . are awarded when the evidence shows a reckless indifference to the rights of others or an intentional and wanton violation of their rights."Collins v. New Canaan Water Co., 155 Conn. 447, 489 (1967).
The court recognizes that the jury has found an intentional injury to Mr. Petrozzi under the second prong of the Suarez formula. The court recognizes that the substantial certainty of the Suarez test is a finding of constructive intentional injury. However, while the plaintiff has satisfied the test, there is no fault amounting to criminality and there is no claim of deliberate intentional injury to Mr. Petrozzi. While the court does not intend to order a remittitur, the amount of the judgment would appear sufficient to discourage Ensign-Bickford from similar actions in the future. The court exercises its discretion and declines to award punitive damages.
6. PRINCIPAL AMOUNT TO WHICH OFFER OF JUDGMENT INTEREST APPLIES
The jury awarded $3,766,380.94. For reasons set forth hereafter, the CT Page 9676 court will not enter a remittitur as to that amount. For reasons set forth herebefore, the court will not add punitive damages to that amount. The court will enter judgment in favor of Michael Petrozzi in the amount of $3,766,380.94. The court will enter judgment in favor of Ensign-Bickford Company as a plaintiff in the amount of $298,506.10 together with an offset against any future worker's compensation payments. It is the opinion of the court that while Ensign-Bickford is entitled to a judgment in its' favor as plaintiff for compensation paid or to be paid, that amount does not reduce the amount of the judgment in favor of the plaintiff Petrozzi. Since the court has ruled that it exercises its discretion to award no punitive damages, offer of judgment interest should be calculated on $3,766,380.94 plus the allowable costs and statutory $350.00 attorney fee.
7. DEFENDANT'S MOTION FOR A REMITTITUR
It is well settled that "litigants have a constitutional right to have factual issues resolved by the jury." Mather v. Griffin Hospital,207 Conn. 125, 138 (1988). In considering a motion for remittitur a trial court "must determine whether the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption." Hinton v. Rosati, 11033, 1998 W.L. 294048, (May 21, 1998). Thus, a "jury award should be sustained so long as it does not shock the sense of justice." Id. (citing Herb v.Kerr, 190 Conn. 136, 139 (1983).
The evidence at trial supported a jury finding that Mr. Petrozzi suffered a devastating life threatening injury as a result of the October 25, 1995 explosion. He was transported by Lifestar from Simsbury to Yale-New Haven Hospital. He had live blasting caps imbedded in his mid torso and skull which required emergency removal. He suffered burns over twenty percent of his body. He underwent thirteen surgeries, twelve of which required general anesthesia. He continues to suffer from permanent scaring and shrapnel remnants imbedded in his body. He lost two and one-half fingers on his left hand resulting in a 52 percent permanent partial impairment. He further suffered a 50 percent permanent partial impairment of his left eye, a 2 percent permanent partial impairment of his left wrist, a 15.6 percent binaural impairment of his ears, and a psychological impairment as a result of the explosion. He received compensation payments of $298,506.10.
In view of the severity of Mr. Petrozzi's injuries and the economic damages awarded to him by the jury, the court is unwilling to find that the jury's verdict is other than "somewhere within the necessarily CT Page 9677 uncertain limits of just damages." Accordingly the court declines to order a remittitur.
7. MOTION TO SET ASIDE VERDICT AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT
The court essentially adopted the defendant's request to charge with regard to the Suarez exception to the exclusivity of Worker's Compensation.
The court charged as follows:
 "There is an exception to the exclusivity of the Worker's Compensation Act in Connecticut. In this case Mr. Petrozzi seeks to recover under an exception to the exclusivity of the act. Under this rule a plaintiff can avoid the exclusivity provision of the Worker's Compensation law if he proves by a preponderance of the evidence that the employer, that is in this case Ensign-Bickford, intentionally injured Mr. Petrozzi, the employee, or the employer has engaged in willful or serious misconduct such that the employer knew that the plaintiff's injury was substantially certain to follow from the employer's conduct.
 Mr. Petrozzi does not claim that Ensign-Bickford deliberately set out to cause his injuries. The issue is whether or not he has proven that Ensign-Bickford intentionally engaged in serious or willful misconduct and knew or believed that Ensign-Bickford knew or believed that Mr. Petrozzi's injuries were substantially certain to follow from those actions.
 If the plaintiff has proven to you by a preponderance of the evidence that this has happened, then Ensign-Bickford is liable for the injury. Once again, did the plaintiff prove by a preponderance of the evidence that Ensign-Bickford engaged in willful or serious misconduct such that at the time they engaged in such misconduct they knew that Mr. Petrozzi's injuries were substantially certain to occur as a result of the corporation's actions."
The defendant's only exception to this portion of the court's charge dealt with the court's reference to "serious or willful misconduct." CT Page 9678 [emphasis supplied]
The defendant requested a charge that the employer must engage in "willful and serious misconduct." [emphasis supplied]
The Supreme Court's formulation of the serious misconduct test comes from Jet v. Dunlap, 179 Conn. 215, 217 (1979). In the earlier Suarez
decision the Supreme Court wrote:
 "We consistently have interpreted the exclusivity provision of the act, General Statute Section 31-284
(a) as a total bar to common law actions brought by employees against employers for job related injuries with one narrow exception that exists when the employer has committed an intentional tort or where the employer has engaged in willful or serious misconduct. Jet v. Dunlap, 179 Conn. 215, 217, 425 A.2d 1263 (1979)." [emphasis supplied]
Suarez v. Dickmont Plastic Corporation, 229 Conn. 99, 106 (1994).
The court is convinced that the charge given to the jury reflects the holding of the Supreme Court opinion in Suarez and is not prepared to set aside the verdict because it finds any error in the charge.
The court admitted one of several prior OSHA citations which the plaintiff attempted to introduce into evidence. The defendant argued that the plaintiff had not laid a sufficient foundation as to the similarity of the OSHA violation to the incident in question. The court relied uponMartins v. Connecticut Light Power, 38 Conn. App. 212, 217 cert. denied231 Conn. 915 (1994) for the proposition that "the requirement of a substantially similar condition is lessened when the evidence is offered to show notice of a dangerous condition." This matter was fully argued outside of the presence of the jury at the time that the OSHA citation was offered. While the court respects the fact that the defendant may be expected to raise the matter on appeal, this court is not prepared to set aside the verdict on the basis of this evidentiary claim. It is the court's belief that the evidence was properly admissible.
The difficult issue faced by the court in this post trial motion is the same issue originally faced by this court at the conclusion of the plaintiff's case when the defendant made a motion for a directed verdict. The defendant's motion for a directed verdict, its motion to set aside the verdict and its motion for judgment notwithstanding the verdict all raise the question of whether "the evidence establishes, as a matter of law, that the party that had obtained the verdict could not and was not CT Page 9679 entitled to prevail." Gesualdi v. Connecticut Company, 131 Conn. 622, 627
(1945). As was the case in the motion for the directed verdict, the evidence must now be construed most favorably in support of the verdict.Aksomitas v. Aksomitas, 205 Conn. 93, 100 (1987).
It is the opinion of the court that the jury could reasonably have found the following:
 1. The defendant believed that loose lead azide was a dangerous waste and that such material would explode if mishandled
 2. The defendant knew that Petrozzi and others who worked at the blast chamber conducted hundreds of destruction operations per year often handling loose lead azide;
 3. In 1990 the defendant performed an analysis of hazards associated with the operations at the blast chamber. The defendant considered the hazard at the blast chamber created by safety rejects or explosions with unusual sensitivity and declared its knowledge that there was a hazard to personnel handling these materials that injury would occur if the materials were initiated and there were no controls in place to avoid the hazard;
 4. The defendant knew that proper procedures for handling waste materials at the blast chamber, including loose lead azide materials, were not always followed;
 5. The defendant knew that the failure to properly handle loose lead azide was extremely dangerous;
 6. The defendant knew that if loose lead azide was consolidated in a cap, the hazard of unplanned detonation at the blast chamber would be removed;
 7. The defendant had the capability and technical knowledge to consolidate loose lead azide materials by potting before Petrozzi's explosion;
8. At the time of the explosion, except for rubber gloves, Petrozzi was wearing the personal CT Page 9680 protective equipment required and directed by the defendant;
 9. Prior to Petrozzi's explosion, the defendant was aware that personal protective equipment provided to Petrozzi was insufficient to protect him from the hazards of an unplanned explosion at the blast chamber;
 10. Prior to Petrozzi's explosion, the defendant was aware that another employee of the company had been injured in an unplanned explosion while handling a blasting cap;
 11. Even with prior knowledge of an OSHA violation concerning personal protective equipment, the defendant continued to require and direct Petrozzi to perform his job with personal protective equipment which it knew was insufficient to protect him from the hazards of an unplanned explosion at the blast chamber;
 12. On October 25, 1995 Petrozzi was injured in an unplanned explosion of loose lead azide materials that he was handling at the blast chamber;
 13. Petrozzi's explosion would not have occurred but for the fact that the defendant required him to work with loose lead azide waste materials;
 14. Petrozzi was severely injured in the explosion, including injury to his eyes, ears, hands and torso;
 15. Loose lead azide waste was the type of explosive with "unusual sensitivity" which the defendant concluded in 1990 created an uncontrolled hazard at the blast chamber;
16. Given the number of times that Petrozzi handled loose lead azide waste, and the number of people involved in handling the waste prior to delivery to the blast chamber for destruction, the defendant knew that it was a substantial certainty that loose lead azide would eventually be mishandled; CT Page 9681
 17. The defendant was aware before Petrozzi's explosion that the potting of loose lead azide would have reduced the hazard of an unplanned explosion.
Mr. Petrozzi claimed at trial that he did not know that he was dealing with loose lead azide. This testimony was hotly contested. The jury appears to have believed Mr. Petrozzi. They further appeared to have believed that Ensign-Bickford could have prevented the accident either by potting loose lead azide and/or by using the more cumbersome loose lead destruction procedures for all destruction in the blast chamber. The jury would further appear have concluded that in willfully choosing not to pot and/or not to use the safer procedure routinely proscribed for loose lead azide in all cases, the defendant Ensign-Bickford engaged in misconduct which it knew was substantially certain to produce Mr. Petrozzi's injuries.
The court is keenly aware of the fact that Ensign-Bickford is engaged in a dangerous business. It is difficult to clearly ascertain the degree to which the jury's substantial certainty concerning injury was contributed to by the facts of the case and the degree to which it was contributed to by the dangerous nature of Ensign-Bickford's business.
It is black letter law that the question before this court is not whether the court would have arrived at the same conclusion arrived at by the jury but rather whether the jury could find as it did. The court is not prepared, in view of the evidence that was presented, to find that the jury was not in possession of sufficient evidence to determine that Ensign-Bickford engaged in willful or serious misconduct such that at the time they engaged in such misconduct they believed that Mr. Petrozzi's injuries were substantially certain to occur as a result of the corporation's actions. The motion to set aside the verdict, the motion for judgment notwithstanding the verdict and the motion for a directed verdict are denied.
III. CONCLUSION
1. The plaintiff's motion for the award of offer of judgment interest is granted. That interest shall be calculated on a principal sum of $3,766,380.94 plus allowed costs and a $350.00 statutory attorney fee.
2. The plaintiff's bill of taxable costs is approved.
3. The parties have agreed on an amount and method to secure the plaintiff's claim. CT Page 9682
4. Defendant's motion to reduce the verdict by the amount of Worker's Compensation payment paid is denied but the defendant's complaint as a plaintiff to recover Worker's Compensation payment is granted. Ensign-Bickford Company in its capacity as a plaintiff is granted judgment in the amount of $298,506.10 together with any amounts that are awarded for future Worker's Compensation payments which may be offset against the recovery ordered herein.
5. Plaintiff's requests for punitive damages is denied as a matter of the court's discretion.
6. Defendant's motion for a remittitur is denied.
7. Defendant's motion to set aside the verdict for a directed verdict or for judgment notwithstanding the verdict is denied.
8. Judgment is entered for. Michael Petrozzi in the amount of $3,766,380.94 plus $3,943.55 in taxable costs plus a $350.00 statutory attorney's fee plus offer of judgment interest. Judgment is entered for Ensign-Bickford Company, as a plaintiff, for $298,506.10.
THE COURT
By KEVIN E. BOOTH